## REPUBLIC VANGUARD INSURANCE COMPANY v. LEONARD BUEHL AND OTHERS. MINNIE DAVIS, APPELLANT.

204 N. W. 2d 426.

February 16, 1973—No. 43467.

*Todd, Zimmerman & Bix* and *Manly A. Zimmerman,* for appellant.

*Jardine, Logan & O'Brien* and *Alan R. Vanasek,* for respondent insurance company.

Heard before Knutson, C. J., and Rogosheske, Todd, and MacLaughlin, JJ.

ROGOSHESKE, JUSTICE.

Defendant Minnie Davis appeals from a summary declaratory judgment determining that the provisions of a homeowners policy issued by plaintiff insurance company to defendants Leonard and Betty Buehl did not obligate the company to defend an action for personal-injury damages sustained by defendant Davis when she was struck by a motorcycle operated by the insureds' minor son. In so far as the complaint in the personal-injury action included allegations of parental negligence claimed to be covered by the policy, we reverse.

Defendant John Buehl, a 16-year-old son of Leonard and Betty Buehl, struck and injured defendant Davis, a pedestrian,

with his motorcycle. She instituted a personal-injury damage action against both the parents and the son. In response to the request of the parents, the company declined to defend, claiming that under the exclusion clause[1] of the policy, coverage did not extend to accidents occurring away from the homeowner's premises. In furtherance of this position, this action for declaratory judgment was initiated. The trial court granted summary judgment in favor of plaintiff insurance company, and defendant Davis appeals.

Defendant Davis concedes that pursuant to our holding in Lang v. General Ins. Co. 268 Minn. 36, 127 N. W. 2d 541 (1964), the policy issued to Leonard and Betty Buehl affords no coverage for that part of the cause of action premised upon their alleged vicarious liability as owners of the motor vehicle for the negligence of their son.[2] However, she contends that she has alleged a separate and distinct cause of action based upon the parents' negligent failure to supervise and control a son they knew, or should have known, possessed dangerous propensities for operating a motorcycle. This cause of action was alleged in these words:

"Said defendants LEONARD and BETTY BUEHL had the

---

[1] The exclusionary provision of the policy provides: "* * * [T]his Policy Does Not Apply:

\* \* \* \* \*

(b) * * * to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles or midget automobiles while away from the premises or the ways immediately adjoining * * *."

The policy defines "automobile" as "a land motor vehicle, trailer or semitrailer."

[2] In Lang v. General Ins. Co. 268 Minn. 36, 42, 127 N. W. 2d 541, 545 (1964), we not only held the exclusionary provision in a nearly identical policy applicable when it was a motor scooter that struck and injured the plaintiff but we also noted: "It is clear that in the instant case the word automobile is defined in a technical sense as a 'land motor vehicle' and included a motor scooter. *The courts have often held that motorcycles are 'vehicles.'*" (Italics supplied.)

ability to control their son JOHN BUEHL and knew of the necessity for exercising said control, and had the opportunity to do so.

"Defendants LEONARD and BETTY BUEHL failed to exercise reasonable care to control their son defendant JOHN BUEHL, in that they caused and permitted the purchase of the motorcycle which defendant JOHN BUEHL was operating on June 24, 1966, at the time of said collision; that said defendants LEONARD and BETTY BUEHL allowed defendant JOHN BUEHL to use said vehicle knowing his use of it was likely to result in injury to another as a natural and probable consequence.

"That defendants LEONARD and BETTY BUEHL were negligent in that they took no reasonable or timely steps to protect plaintiff from the negligence of defendant JOHN BUEHL or from his known propensity, namely, bad driving habits."

Such a cause of action, although infrequently prosecuted, is not novel and sets forth a valid claim for relief predicated on the theory of common-law negligence. Although parents under the common law are generally not held liable in damages for the torts of their minor children solely because of that relationship, where the parents cause the tort to occur through their own negligence, they may be held liable for the damages.[3]

---

[3] Restatement, Torts 2d § 316, states: *"A parent is under a duty to exercise reasonable care so to control his minor child* as to prevent it from intentionally harming others or *from so conducting itself as to create an unreasonable risk of bodily harm to them,* if the parent

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control." (Italics supplied.)

See, also, 2 Harper & James, Torts, p. 1056, where it states: "Where a parent has reason to know of a propensity for a particular type of dangerous conduct on the part of his minor child he is bound to take reasonable steps (by discipline, training, or the like) to curb or guard against the propensity."

In Clarine v. Addison, 182 Minn. 310, 234 N. W. 295 (1931), we recognized the availability of such a cause of action when a minor child was given a .22-caliber pistol by his father.[4] We there sustained the trial court's holding that the parent was not liable, but only because the record before this court failed to adequately establish the possession of any dangerous propensities on the part of the minor son. We therefore concluded (182 Minn. 311, 234 N. W. 296):

"The record does not show whether Addison, Jr. was experienced or inexperienced, careful or careless, with firearms. There is nothing to indicate that the son, come almost to man's estate, was an unsafe donee of the target weapon in question."

Other leading jurisdictions have also recognized the availability of this cause of action. In McDonald v. Home Ins. Co. 97 N. J. Super. 501, 235 A. 2d 480 (1967), Walter Dorman, Sr., named Robert and Sarah McDonald as defendants responsible for the death of his son, Walter Dorman, Jr., allegedly caused by the negligent driving of defendants' infant son, Mickey McDonald. Home Insurance Company declined liability coverage based upon an exclusion provision identical to that included within the homeowners policy issued to Leonard and Betty Buehl. The McDonalds settled the action brought against them and commenced an action to recover the costs arising out of that settlement. Summary judgment was granted by the trial court in favor of Home. We agree with the appellate court's reversal of the summary judgment and note with approval its discussion concerning the nature of the alleged cause of action (97 N. J. Super. 503, 235 A. 2d 482):

---

[4] In that case, Harry Addison, Sr., furnished his minor son, Harry Addison, Jr., with a .22-caliber pistol. Plaintiff subsequently sued both the parent and son on behalf of his own child for personal injuries he suffered when accidentally shot by Harry Addison, Jr. Plaintiff appealed from an order denying his motion for new trial after the trial court dismissed the action as to Addison, Sr.

"We hold that Home was obliged to defend the McDonalds against the Dorman action. The *action* against the McDonalds was not based upon 'the ownership, maintenance, operation, use, loading or unloading of * * * automobiles * * *' even though the immediate cause of the *injury* and death of Dorman, Jr. was Mickey's operation of the automobile. *The action was based upon their alleged negligence in failing to supervise and control their child, knowing of his violent and dangerous habits.*" (Italics supplied in part.) [5]

Since the elements of such a cause of action involve a breach of duty by parents to exercise reasonable supervision and control over their minor child so as to prevent him from creating an unreasonable risk of bodily harm to others, liability is not established unless it is also proved that the parents know, or have reason to know, of the necessity and opportunity for exercising such control and are chargeable with knowledge of the dangerous or violent propensities of the child. In short, liability of the parent arises from his active parental misconduct in creating an unreasonable risk of harm to others by placing an instrumentality into the hands of a minor child who the parents know, or ought to know, is unable to utilize it without endangering innocent third parties.

The record here discloses no facts concerning the accident, the age or habits of the child, or the knowledge and conduct of the parents. We, of course, do not pass on any claimed evidentiary support for defendant's allegations against the parents or in any way undertake to assess the likelihood of her recovery. Such determinations need not be undertaken, for an insurance company's duty to defend is contractual, to be determined by the allegations of the complaint against the insured and the indemnity coverage afforded by the policy. Where the allegations of a complaint state a cause of action within the terms of policy coverage,

---

[5] To the same effect, see Lalomia v. Bankers & Shippers Ins. Co. 35 App. Div. 2d 114, 312 N. Y. S. 2d 1018, appeal dismissed, 27 N. Y. 2d 796, 315 N. Y. S. 2d 856, 264 N. E. 2d 349 (1970).

the insurance company must undertake to defend the insured. Christian v. Royal Ins. Co. 185 Minn. 180, 240 N. W. 365 (1932).[6] Here, the express language of the policy imposes an obligation upon plaintiff insurance company to indemnify Leonard and Betty Buehl as named insureds[7] against their liability for bodily-injury damage and to defend any suit against them "alleging" such liability "even if any of the allegations of the suit are groundless, false or fraudulent."[8] Since defendant Davis has alleged a cause of action against the Buehls within the indemnity coverage afforded by the policy, we hold that plaintiff insurance company is contractually obligated to defend them even though such action may prove to be "groundless, false or fraudulent."

Affirmed as to the judgment entered with respect to the cause of action grounded in negligence against the child and, by imputation, against the parents; reversed as to the cause of action alleging negligence against the parents in permitting or causing the child to injure defendant Davis.

---

[6] See, also, Annotation, 50 A. L. R. 2d 458, § 4; 7A Appleman, Insurance Law and Practice, § 4682.

[7] The policy expressly includes both Leonard and Betty Buehl as the "Named Insured."

[8] Coverage E of the insurance policy provides: "(a) Liability: *To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit* against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, *even if any of the allegations of the suit are groundless, false or fraudulent;* but the Company may make such investigation and settlement of any claim or suit as it deems expedient." (Italics supplied.)