ELEANOR FABER, MOTHER AND NATURAL
GUARDIAN OF KIM FABER, A MINOR, v.
JAMES ROELOFS AND OTHERS.
TRI-STATE MUTUAL INSURANCE
COMPANY AND ANOTHER, APPELLANTS.

250 N. W. 2d 817.

January 14, 1977—Nos. 45805, 45818.

*Faegre & Benson* and *Wright W. Brooks,* for appellant Tri-State Mutual.

*Erickson, Zierke, Kuderer, Utermarck & McKenna, Charles R. Zierke,* and *D. Gerald Wilhelm,* for appellant Mutual Service.

*Winter, Lundquist, Sherwood & Athens* and *Marvin E. Lundquist,* for respondent plaintiffs.

*Peterson, Popovich, Knutson & Flynn, James E. Knutson,* and *Ronald C. Ruud,* for respondent school district.

Heard before Otis, Peterson, and Yetka, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This case was before us two years ago, in Faber v. Roelofs, 298 Minn. 16, 212 N. W. 2d 856 (1973). Kim Faber was a student at the Edergton Christian Elementary School. He was injured as he ran out into the street alongside his school bus, slipped, and fell under the wheels. The bus was owned by defendant James Roelofs, driven by defendant Arnold Brouwer, hired by Independent School District No. 581, and serviced students at the Christian Elementary School. The jury found the owner of the bus not negligent, the driver not negligent, the Christian Elementary School 25-percent negligent, the school district 20-percent negligent on each of two items of negligence, and Kim 35-percent negligent. Damages of $145,800 for Kim and $66,000 to Wilbert Faber, Kim's father, for Kim's medical expenses, were reduced to $94,770 and $42,900. Judgment was entered against the school district for the $42,900 amount. With respect to the $94,700 amount it was ordered:

"That the Plaintiff, Kim Faber, is entitled to Judgment against the Defendant, Independent School District No. 581, Edgerton, in the amount of $50,000.00; that said Plaintiff is also entitled to Judgment for such additional amount as may be subsequently determined to have been covered by insurance in accordance with Minnesota Statutes 466.06, but not to exceed the sum of $44,770.00."

This was the judgment which we affirmed. In 1974, Wilbert Faber died and Kim's mother, Eleanor Faber, was substituted as a plaintiff for Wilbert Faber.

This appeal concerns the liability for this judgment on the part of two insurers, Tri-State Mutual Insurance Company and Mutual Service Casualty Insurance Company.[1] The school district has a general liability policy with Tri-State with limits of $50,000

---

[1] Defendant James Roelofs moved in this court for an order dismissing the appeal as to him. This opinion makes it unnecessary to rule on the motion.

for bodily injury to each person. The school district is an additional insured under Roelofs' automobile liability policy with Mutual, with the same limits of liability. The three issues involved in this appeal are: (1) Is coverage for this judgment available to the school district under the Tri-State policy? (2) Is coverage also available under the Mutual policy? (3) If coverage is available from Tri-State, is Tri-State liable for $50,000 or for $100,000? The trial court held that coverage was available under both policies and that Tri-State was liable for up to $100,000. We affirm as to the coverage questions, but reverse on the issue of the extent of Tri-State's liability.

I

The Tri-State policy contained the following exclusion:

"The insurance does not apply to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft, automobile or watercraft owned, operated or hired by or for the insured or any officer, employee or member of the teaching, supervisory or administrative staff thereof. For the purpose of this exclusion the word 'hired' shall be deemed to include any contract to furnish transportation of pupils to and from schools."

The school district was found liable because of its negligence (1) in acting or failing to act in establishing a bus route, and (2) in acting or failing to act in establishing bus loading and unloading procedures. Whether or not coverage was afforded for this liability under the terms of the policy, Tri-State is nevertheless estopped from denying coverage because of its action in controlling the defense of the action without a reservation of rights.[2] Tri-State controlled the school district's defense from

---

[2] The district court stated in a memorandum: "The Court is satisfied that the majority rule is that the insurer is estopped or has waived (the courts in these cases seem to use these terms interchangeably) its defense of no coverage in those cases in which it has assumed and directed the defense of an action against its insured. Here, Tri-State not only assumed control of and conducted the whole trial to verdict but it

the initiation of the action through the first appeal in this court. It never gave notice of a reservation of its right to deny coverage.[3] Upon such facts, our decisions, which are fully discussed in Oehme v. Johnson, 181 Minn. 138, 231 N. W. 817 (1930),[4] hold that Tri-State is estopped from denying liability under the policy. In Oehme, we cited with approval the following language from Employers L. A. Corp. v. Chicago & Big Muddy C. & C. Co. 141 F. 962, 964 (7 Cir. 1905):

"The act of the plaintiff in error, in taking control and dominion of the action for damages, and keeping such control and dominion until judgment was entered, without notice to the defendant in error that it did not consider itself liable under the policy—thereby taking from the defendant in error the control and dominion of the action—is such a construction of the policy, by contemporaneous acts, as estops plaintiff in error from denying liability, now that that action is at an end. To take any other view of this case, would be to hold that the assurer could effectually tie the hands of the assured, in an action that might, or might not, on a close construction of the policy, be covered by the terms of the policy, and then, the cause being determined against it, insist that upon a closer reading of the policy, the assured ought to have been left to make its own defense, and at its own risk. This cannot be the law." 181 Minn. 152, 231 N. W. 822.

Tri-State argues that the insured must be shown to have been prejudiced by the insurer's conduct before the insurer can be estopped from raising the defense of noncoverage. Such is the

---

controlled and conducted all post-trial proceedings and conducted all appellate proceedings, including petition for rehearing which was denied. At no time did Tri-State indicate in any way that it denied coverage or was reserving its right to deny coverage under its policy of the claims of the two plaintiffs."

[3] Mann v. Employers Lia. Assur. Corp. 123 Minn. 305, 143 N. W. 794 (1913).

[4] See, also, Peterson v. Maloney, 181 Minn. 437, 232 N. W. 790 (1930); Simons v. Cowan, 217 Minn. 317, 14 N. W. 2d 356 (1944).

rule with respect to an insurer who withdraws from the case before trial.[5] It has been argued that the same policy should apply in cases such as the one at bar.[6] However, under our rule prejudice to the insured will be conclusively presumed when the insurer exercises complete control over the defense without a reservation of rights.

In Tozer v. Ocean Accident & Guarantee Corp. 94 Minn. 478, 103 N. W. 509 (1905), the policy at issue did not afford coverage for injuries to a child employed contrary to the child labor law. Such an employee was injured, and the insurer undertook to defend the claim. The plaintiff offered to settle for $5,000, the amount of the policy limits, and the insurer refused. Eventually, a plaintiff's verdict of $7,750 was returned. At that point, the insurer denied liability under the policy. We held that the insurer was liable for the policy amount of $5,000. Mr. Justice Brown argued in dissent that no prejudice had been shown other than to the extent that the eventual liability ($7,750) exceeded the plaintiff's settlement offer ($5,000), and that allowing the insured to recover the entire policy amount allowed him to recover when he was not prejudiced by the insurer's actions. The majority, by not indicating in the face of this dissent specifically how the insured was prejudiced, but by holding that the insurer will be estopped from denying liability when to do so will prejudice the insured, implicitly held that prejudice will be presumed from the act of the insurer in controlling the defense.

Prejudice is presumed because the insurer, by taking control of the defense without a reservation of rights, takes away from the insured his right to control the defense as he sees fit and to make or negotiate a settlement. Oehme v. Johnson, 181 Minn. 138, 151, 231 N. W. 817, 822 (1930) ; Simons v. Cowan, 217 Minn. 317, 14 N. W. 2d 356 (1944) ; Gamble-Skogmo, Inc. v. St. Paul

---

[5] Minnesota Mutual Fire & Cas. Co. v. Benson, 292 Minn. 314, 195 N. W. 2d 446 (1972).

[6] Keeton, Insurance Law, § 6.4(f), p. 368. See generally, Annotation, 38 A. L. R. 2d 1148, 1157 to 1161.

Mercury Ind. Co. 242 Minn. 91, 103, 64 N. W. 2d 380, 388 (1954). Because the insurer has available to him the simple procedure of giving a notice of reservation of rights, to estop him from denying liability when he controls the defense without having given such a notice is not a harsh result.[7]

Tri-State then argues that it cannot be estopped by its action in controlling the defense because it was required to defend the action under Republic Vanguard Ins. Co. v. Buehl, 295 Minn. 327, 204 N. W. 2d 426 (1973), which held that an insurer has a duty to defend the insured if at least one of the claims asserted against him is within the policy coverage. It cites as a "corollary rule" a proposition stated in Annotation, 38 A. L. R. 2d 1148, 1179:

"It seems that if an action against one to whom a policy of liability insurance has been issued is based upon claims some of which are within the coverage of the policy and some not, then the insurer, by defending the action, is not, after recovery upon a claim not within the policy coverage, estopped from asserting such noncoverage."

Before the Annotation rule can be considered, however, there must be asserted against the insured both a claim within and a claim without coverage. Tri-State argues that the claims upon which plaintiffs eventually recovered were without the coverage, but that there was asserted a claim within coverage—negligent supervision of the children at school. This contention is based upon the italicized language of count II, paragraph IV, of the complaint:

"That defendant Independent School District No. 581, Edgerton, negligently, carelessly and contrary to applicable rules and regulations, failed to supervise and instruct the operators of buses relative to the loading and unloading of student passengers at the various schools for which said defendant school

---

[7] That such is our law has been recognized in Boulet v. Millers Mutual Insurance Assn. of Illinois, 362 F. 2d 619 (8 Cir. 1966) and Security Ins. Co. v. Jay, 109 F. Supp. 87 (D. Minn. 1952).

district had contracted or agreed to have said buses service, *negligently and carelessly failed to supervise the children and students at said schools,* failed to make proper and safe arrangements for the loading and unloading of said children from said buses, and negligently and carelessly permitted a dangerous and hazardous loading and unloading procedure and condition to exist with reference to the students of the various schools serviced pursuant to the above arrangements." (Italics supplied.)

· The difficulty with this argument is that the Tri-State policy excludes "bodily injury * * * arising out of the * * * use" of the bus. Kim's injuries arose out of the use of the bus. If that is sufficient to negate coverage under the Tri-State policy, then there is *no* claim in paragraph IV which is within coverage. It matters not that the italicized clause is a claim of general negligence; the injuries arose out of the use of the bus and the exclusion would apply. There not being any claim within coverage, the argument falls.

While Tri-State refers to Buehl as presenting a situation similar to the one at bar, the exclusion clause in Buehl was different. In that case, the policy did not apply "to the * * * use * * * of (1) automobiles." 295 Minn. 329, note 1, 204 N. W. 2d 427. The complaint alleged defendants were (1) vicariously liable for the negligent use of a motorcycle on the part of their son, and (2) negligent in failing to control their son, knowing of his dangerous propensities. The latter claim was held to be within the policy coverage, as it alleged common-law negligence in parental supervision, not negligence in the use of an automobile. In the case at bar, however, the exclusion does not apply merely to the *use* of an automobile, but to bodily injuries *arising out of* the use of an automobile and is thus distinguishable.

## II

Mutual contracted as follows:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Mutual stipulated that the school district was an "additional insured" under the omnibus clause of the policy.

Kim Faber was run over by one of the school buses insured by Mutual. The driver and owner were both absolved of negligence. The school district was found negligent with respect to (1) establishment of bus routes, and (2) establishment of bus loading procedures.

Mutual's contract requires it to indemnify the school district if the district is legally obligated to pay damages because of bodily injury sustained by Kim caused by accident and arising out of the use of the school bus. The school district is legally obligated to pay damages. The damages arose because of bodily injury sustained by Kim, caused by accident when he was run over by the school bus.

Mutual argues that the injuries did not "arise out of the use" of the school bus. It argues that neither the driver nor the owner was negligent, and that the injuries therefore "arose out of" some other event, e. g., the school district's two-fold negligence with respect to bus routes and boarding procedures. This contention, if accepted, would result in rewriting the last phrase of the coverage clause to read "arising out of the *negligent* * * * use of the automobile." That is not how the policy reads.

"The phrase 'arising out of' is not to be construed to mean 'proximately caused by.' The thought expressed by the words 'arising out of the use of an automobile' is comprehensive and broad in service. The phrase itself is much broader than a phrase such as 'proximately caused by the use of the automobile.' The words 'arising out of' mean causally connected with, not 'proximately caused by' use. ' "But for" causation, i.e., a cause and re-

sult relationship, is enough to satisfy the provision of the policy.' " 1 Long, The Law of Liability Insurance, § 1.22, pp. 1-57.

In Union Mutual Fire Ins. Co. v. King, 113 N. H. 39, 300 A. 2d 335 (1973), plaintiff mechanic slipped and fell on an icy driveway while pushing the insured's car out of her garage. There was no negligence involved in the operation, maintenance, or use of the automobile; any negligence arose from the accumulation of ice on the driveway. Nevertheless, the insurer was held liable under the same provision at issue here. "All that is necessary is that the accident was causally connected with the use or maintenance of the insured vehicle." 113 N. H. 41, 300 A. 2d 336.[8]

---

[8] Mutual's contention would be well founded if the following policy limitation applied to this case: "It is agreed that the insurance for Bodily Injury Liability and Property Damage Liability does not apply to injury, sickness, disease, death or destruction which arises out of the loading or unloading of an automobile, if the accident occurs on premises (including the ways immediately adjoining) owned, rented or controlled either by the person or by the employer of the person against whom claim is made or suit is brought for such injury, sickness, disease, death or destruction. This limitation does not apply with respect to claims made or suits brought against the following insureds:

"(a)   the named insured or, if the named insured is an individual, his spouse, if a resident of the same household;

"(b)   a bailee or borrower of the automobile or an employee of either of them or of the named insured;

"(c)   if the named insured is classified and rated as a truckman, any person or organization, or any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others; subject nevertheless to the limitations of any endorsement made a part of the policy and specifically applicable to truckmen;

"(d)   any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above."

Then, the school district would not have coverage unless its liability arose because of the acts or omissions of the driver or owner. Both the driver and owner were exonerated. However, the trial court found that

In Gamble-Skogmo, Inc. v. St. Paul Mercury Ind. Co. 242 Minn. 91, 64 N. W. 2d 380 (1954), one Lyngstad was injured while he was reassembling a farm implement known as a Cockshutt swather. Gamble-Skogmo had sold Lyngstad's employer the swather, and had shipped it, disassembled, on the back of an insured 1 1/2-ton truck. When the truck reached its destination, Lyngstad and others began to reassemble the swather prior to removing it from the truck. Lyngstad was injured. The jury found Gamble-Skogmo negligent in failing to give proper assembly instructions. We held that the injury did not arise out of the use of the insured truck, notwithstanding the fact that the policy covered injuries arising out of unloading operations. The injury would have taken place whether the swather was reassembled on the truck or on the ground; the truck was simply the situs of the injury, not even a "but for" cause. 242 Minn. 111, 64 N. W. 2d 392. The absence of even a "but for" causal relation between the use of the vehicle and the injury precluded coverage. Annotation, 89 A. L. R. 2d 150, 154.[9] In the case at bar, Kim was run over by the insured vehicle. The causal relation is present. Mutual's policy affords coverage.

### III

The Tri-State policy provides for limits of liability of $50,000 for "bodily injury" to "each person" and $300,000 for "each occurrence." Under "Limits of Liability" the policy states:

"Coverage A—The limit of bodily injury liability stated in the schedule as applicable to 'each person' is the limit of the company's liability for all damages because of bodily injury sus-

the school district did not lease, own, or control the premises upon which, or adjoining which, the accident occurred. (Kim was struck on the street next to the Christian Elementary School, the parochial school which he attended.) Thus, the limitation does not apply.

[9] The other cases cited by Mutual deal with the question of whether someone was "using" the automobile so as to be an "additional insured" within the omnibus clause. Mutual has conceded that the school district is an additional insured, so those cases are not relevant.

tained by one person as the result of any one occurrence; but subject to the above provision respecting 'each person', the total liability of the company for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the schedule as applicable to 'each occurrence'."

In Holtz v. Mutual Service Cas. Co. 264 Minn. 121, 117 N. W. 2d 767 (1962), Mrs. Holtz was injured in an automobile accident. She was awarded $48,400 for her injuries, and Mr. Holtz was awarded $5,857.16 for Mrs. Holtz's medical expenses. The defendant's insurer had issued a policy with limits of liability of $50,000 for "each person". The Holtzes claimed that the insurer was liable for the total of both awards, while the insurer contended that its maximum liability was $50,000. We sustained the contention of the insurer, and held that the insurer was liable to Mrs. Holtz for $48,400, and to Mr. Holtz for the difference between the $50,000 policy limits and the $48,400 award to Mrs. Holtz, or $1,600.

"Quite clearly the policy means that $50,000 is the maximum amount of defendant's exposure for all damages, including consequential damages, occurring to any and all persons by virtue of injury sustained by any one person in a single accident." 264 Minn. 126, 117 N. W. 2d 770.

In Holmgren v. Heisick, 287 Minn. 386, 178 N. W. 2d 854 (1970), Winton Holmgren, a minor, was injured in an automobile accident. His father brought suit (1) in Winton's name for his injuries, and (2) in his own name for his son's medical expenses and for loss of his son's services. We held:

"* * * Because Winton was a minor, Herbert Holmgren, his father and natural guardian, brought an action in Winton's name for general damages and in his own name for special damages. Both of these claims constituted claims for injury to one person within the meaning of the policies of insurance of the type here involved." 287 Minn. 391, 178 N. W. 2d 858.

Holtz and Holmgren are in accord with the rule settled in other jurisdictions. Annotation, 13 A. L. R. 3d 1228, 1234, states:

"Under policies fixing a maximum recovery for 'bodily' injury to one person, it has usually been held that the limitation was applicable to all claims of damage flowing from such bodily injury, and that therefore it is immaterial that some part of the damages may be claimed by a person other than the one suffering the bodily injuries. In other words, all damage claims, direct and consequential, resulting from injury to one person, are subject to the limitation."

This appears to be the universal rule, as we have not been made aware of any jurisdiction which has held otherwise.[10]

Minn. St. 466.12, subd. 3a, requires school districts to obtain liability insurance meeting the requirements of § 466.04. Subdivisions 1 and 2 of Minn. St. 1974, § 466.04, provided:

"Subdivision 1. Liability of any municipality on any claim within the scope of sections 466.01 to 466.15 shall not exceed

"a. $25,000 when the claim is one for death by wrongful act or omission and $50,000 to any claimant in any other case;

"b. $300,000 for any number of claims arising out of a single occurrence.
No award for damages on any such claim shall include punitive damages.

"Subd. 2. The limitation imposed by this section on individual claimants includes damages claimed for loss of services or loss of support arising out of the same tort."

Kim Faber was awarded $94,770 for his bodily injuries; Wilbert Faber, Kim's father, was awarded $42,900 for Kim's medical expenses. In Faber v. Roelofs, 298 Minn. 16, 25, 212 N. W. 2d 856, 862 (1973), interpreting § 466.04, we held:

---

[10] The only case which we have found which held to the contrary, Cotton States Mutual Ins. Co. v. Phillips, 108 Ga. App. 56, 131 S. E. 2d 803 (1963), does not survive State Farm Mutual Auto. Ins. Co. v. Hodges, 221 Ga. 355, 144 S. E. 2d 723 (1965), reversing 111 Ga. App. 317, 141 S. E. 2d 586 (1965), which had relied on Phillips.

"Minn. St. 466.04 limits a municipality's liability to 'any claimant' to $50,000. Since the parent's action is essentially separate from the child's action, we feel that an injured minor and his father are both claimants under § 466.04 and that each may recover up to $50,000."

The district court ruled that Tri-State was liable to both Kim and his father for up to $50,000 each, notwithstanding the express terms of the policy and the Holtz and Holmgren decisions. His initial reason for that ruling was that our interpretation of "each claimant" in Faber v. Roelofs, *supra*, was "incorporated" into the Tri-State policy as a matter of law.[11] However, in Faber we only interpreted the language "each claimant" in § 466.04. We were not presented with, nor did we pass upon, the standard policy language "bodily injury" to "each person." Our holding was that the school district could be held liable to both Kim and his father for up to $50,000. The question as to whether Tri-State is liable for that amount is not answered by interpreting § 466.04 or by reading our earlier Faber decision, but by reading the policy. The policy is clear and unambiguous, it uses standard terms which have been given a constant interpretation. A holding to the contrary not only would grant the school district coverage for which it paid no premiums, and be inconsistent with the language of the policy itself, it would result in our holding that the phrase "bodily injury to each person" means different things depending upon the identity of the insured. Also, we would

---

[11] The district court stated: "In that case the Supreme Court held that the father and his son are both claimants within the terms of 466.04 and that each may recover up to $50,000.

"It is evident that the school sought to cover its liability as set out in Chapter 466 by the purchase of insurance and Tri-State knew it was to insure the liability of the school within the provision of said Chapter. The school had every right to expect that the Tri-State policy covered liability to the extent of $50,000 for each claimant. The Tri-State policy incorporates Chapter 466 as a matter of law. Liability of the school district to the extent of $50,000 to each claimant is therefore covered by such policy."

have to ignore the "basic rule" cited by the plaintiffs, "that contracting parties must be presumed to have contracted with reference to the laws which exist at the time and place of making the contract." At the time of making the contract, the policy used a standard phrase, specifically defined, and universally interpreted to have a specific meaning.

The second reason the trial judge gave for his ruling was that Tri-State was estopped from asserting the policy limits because of its action in controlling the defense.[12] By taking charge of the defense Tri-State is estopped simply from denying coverage under the policy. We have been cited to no case which holds that by controlling the defense the insurer is estopped from denying liability in excess of the policy limits. The prejudice presumed when the insured surrenders control of his defense to the insurer does not act as to eliminate the policy limits. Tozer v. Ocean Accident & Guarantee Corp. 94 Minn. 478, 103 N. W. 509 (1905). Estoppel acts only to prevent Tri-State from denying that its policy covers this injury.[13]

---

[12] The court stated: "The rationale for the doctrine of estoppel and waiver is clearly seen in this case. The assumption of control and defense of a lawsuit by the insurer deprives the insured of its right to retain its own counsel so as to control its own defense and further requires the insured to cooperate with the insurer in such defense. In this case, Tri-State argued in post-trial motions and in the Supreme Court that the Fabers were one 'claimant' for purposes of 466.04 and at no time did it ever claim that there was no coverage if Fabers were one or two claimants. The school never knew it was facing an uncovered liability to the claimant father. Tri-State's failure to raise this issue, to reserve its rights to deny coverage, denied the school the opportunity to retain its own counsel to protect it on this issue. In fact, the interests of Tri-State and the school are adverse on this issue and Tri-State should not now be allowed to deny full $50,000 coverage as to each claimant, father and son."

[13] We note that the interests of Tri-State and the school district were not adverse on this issue, contrary to the belief of the trial court. Throughout the main action, and in this court, Tri-State argued that Kim and his father were but one "claimant" for purposes of § 466.04. This was completely in accord with the school district's interests, for,

The district court was obviously concerned that if Tri-State's liability was limited to $50,000 the school district would be exposed to liability for which it would not be insured. Such is not the case. Under the judgment which we affirmed earlier, the school district is liable to Kim's father for $42,900 and to Kim for $50,000 plus such additional amount as may be subsequently determined to have been covered by insurance, not to exceed $44,770. The Mutual policy and the Tri-State policy each provide $50,000 of coverage. Thus, Kim's first $50,000 is covered, Kim's father's $42,900 is covered, and there remains $7,100 of insurance coverage. That amount goes to Kim under the terms of the district court judgment. Of course, had the school district not been covered by the Mutual policy it would have been exposed to an uninsured liability because of our interpretation of the "each claimant" language of § 466.04 in Faber v. Roelofs, *supra*. We trust that school districts will take note of this problem and modify their insurance coverage accordingly so as to comply with the mandate of Minn. St. 466.12, subd. 3a.

The judgment of the district court is affirmed in so far as it holds that there is coverage in this case under both the Tri-State and Mutual policies. It is reversed as to the issue of Tri-State's limit of liability and modified to provide that each insurer is liable for $50,000, with $57,100 going to Kim Faber and $42,900 going to Eleanor Faber, and, as modified, is affirmed.

YETKA, JUSTICE (concurring in part and dissenting in part).

I concur in that portion of the majority opinion which holds that a liability insurer who undertakes control of the defense of a suit against its insured without giving notice of a reservation of rights is estopped from later denying coverage for the liability under the policy; and, further, that an insurer who contracts to pay on behalf of the insured all damages the insured is obligated to pay for bodily injury arising out of the use of an automobile

---

if successful, it would have reduced significantly the school district's liability.

is liable under that policy when a person is run over by the subject vehicle.

However, I dissent from that portion of the opinion which limits the maximum recovery to a total of $50,000 on each policy in this case. The trial court allowed father and son each a recovery of $50,000 under the Tri-State policy. The rationale for its decision is set forth in its memorandum:

"It is evident that the school sought to cover its liability as set out in Chapter 466 by the purchase of insurance and Tri-State knew it was to insure the liability of the school within the provision of said Chapter. The school had every right to expect that the Tri-State policy covered liability to the extent of $50,000 for each claimant. The Tri-State policy incorporates Chapter 466 as a matter of law. Liability of the school district to the extent of $50,000 to each claimant is therefore covered by such policy.

"The rationale for the doctrine of estoppel and waiver is clearly seen in this case. The assumption of control and defense of a lawsuit by the insurer deprives the insured of its right to retain its own counsel so as to control its own defense and further requires the insured to cooperate with the insurer in such defense. In this case, Tri-State argued in post-trial motions and in the Supreme Court that the Fabers were one 'claimant' for purposes of 466.04 and at no time did it ever claim that there was no coverage if Fabers were one or two claimants. The school never knew it was facing an uncovered liability to the claimant father. Tri-State's failure to raise this issue, to reserve its rights to deny coverage, denied the school the opportunity to retain its own counsel to protect it on this issue. In fact, the interests of Tri-State and the school are adverse on this issue and Tri-State should not now be allowed to deny full $50,000 coverage as to each claimant, father and son.

"Even if this Court is in error in its position that Chapter 466 is included in Tri-State's policy, Tri-State is estopped or has waived its right to deny the same."

It appears incongruous to me to find on the first time this case came before us that the father and son are separate claimants under the statute, and yet to now hold that under the policy they are to be treated as one "person" and thus limit the total recovery for both to $50,000 under that same policy instead of allowing father and son to each recover $50,000.

A school district had liability at the time of the accident only to the extent that it had insurance. If the school district took out liability insurance, it appears logical to me it intended to take the insurance to cover the limits and policy risks for which the statute allowed recovery. The trial court found that the school district did intend to do so and that Tri-State knew it was to insure that liability. The record, however, contains no testimony to support that finding. I would, therefore, remand to the district court for the sole purpose of determining whether the school district intended to take out insurance for the risks and the recovery limits contemplated by the statute, and whether the insurance was, in fact, so written.

The majority finds it difficult to find the insurance company liable for a risk it did not contemplate and for which it did not collect a premium. I would agree with that concern, but I find it just as objectionable that an insurance carrier would collect a premium for a contemplated risk and then not be obligated to pay when there was a loss within that risk.

TODD, JUSTICE (concurring in part and dissenting in part).
I join in the opinion of Mr. Justice Yetka.

MACLAUGHLIN, JUSTICE (concurring in part and dissenting in part).
I join in the opinion of the Mr. Justice Yetka.

SCOTT, JUSTICE (concurring in part and dissenting in part).
I agree with Mr. Justice Yetka.