683 A.2d 1127

**CSX TRANSPORTATION, INC.**

v.

**MASS TRANSIT ADMINISTRATION.**

**No. 1779, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Oct. 30, 1996.

M. Natalie McSherry (Stephen B. Caplis and Whiteford, Taylor & Preston, on the brief), Baltimore, for appellant.

William A. Kahn, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Argued before MOYLAN, HOLLANDER and SALMON, JJ.

SALMON, Judge.

Appellant, CSX Transportation, Inc. (CSXT), operates Maryland Rail Commuter (MARC) service for the Mass Transit Administration (MTA) under a State procurement contract. The contract requires the MTA (appellee) to indemnify CSXT for any and all claims arising out of "Contract Service," which includes, *inter alia,* train operation. This case arises out of a claim, submitted to the MTA on October 25, 1993 by CSXT, for indemnification of property damage losses resulting from a December 1992 collision between a MARC train and a backhoe owned by a third party. The claim was denied by the MTA on May 27, 1994. CSXT appealed the MTA's denial to the Maryland State Board of Contract Appeals (the "Board"). On

January 3, 1995, after hearing argument on cross motions for summary disposition, the Board affirmed the MTA's denial of the claim. CSXT filed a Petition for Judicial Review with the Circuit Court for Howard County, and on September 11, 1995, the court affirmed the Board's decision.

CSXT filed a timely appeal presenting the following issues, which we have rephrased:

1. Whether the indemnification claim arose out of contract service because the collision involved a MARC train operating pursuant to the contract.
2. Whether MTA's promise to indemnify CSXT is rendered unenforceable by section 5–305 of the Maryland Courts and Judicial Proceedings article.

### FACTS

In 1979, the Baltimore & Ohio Railroad Company, predecessor in interest to CSXT, and the State Railroad Administration, predecessor in interest to the MTA, entered into certain leasing and operating agreements which were later superseded by a Commuter Rail Passenger Service Agreement (the "contract"). Pursuant to the contract, CSXT operates weekday commuter passenger rail service known as MARC between Baltimore and Washington, D.C., and between Washington and Martinsburg, West Virginia, on tracks owned by CSXT and using station facilities owned by CSXT, CSXT and MTA rolling stock, CSXT maintenance facilities, and CSXT employees.

CSXT's primary obligations under the contract are summarized in Article I, section 1(a):

SECTION 1. *SERVICE OBLIGATION*

(a) CSXT will provide regularly scheduled daily commuter rail service on weekdays (Monday through Friday) on its Capitol Subdivision line between Baltimore, Maryland and Washington, DC, its Metropolitan and Cumberland Subdivision lines between Martinsburg, West Virginia, and Washington, DC, in accordance with Section 2 of this Agreement. *This train operation, plus the maintenance of equipment,*

*access of and use of facilities, ticket sales, and other activities required to support the operation of the train service as provided in this Article I, shall be called the "Contract Service."* CSXT will make available its rail facilities on the above stated lines to provide the Contract Service. CSXT will operate the Contract Service in a safe and efficient manner with use of appropriate facilities and staff for management, train operations, and maintenance....

(Emphasis added.)

Under section 9(b) of the contract, the MTA agreed to indemnify CSXT from loss arising out of the Contract Service:

SECTION 9. *RISK OF LIABILITY, INDEMNIFICATION AND INSURANCE*

(b) *Indemnification by Administration*

(1) The Administration agrees to indemnify, save harmless, and defend CSXT *from any and all casualty losses, claims, suits, damages or liability of every kind arising out of the Contract Service* under this agreement....

(Emphasis added.)

CSXT contracted with Melvin Benhoff Sons, Inc. (Benhoff) to remove and replace four public road crossings over CSXT's track. One of the crossings was at Hanover Street in Baltimore City. Benhoff's work was part of general track rehabilitation to benefit all traffic, both passenger and freight. The MTA was not notified of the work to be performed by Benhoff or asked to contribute to the cost of the work.

Benhoff commenced work with a backhoe at the Hanover Street crossing on December 18, 1992. Although a CSXT supervising foreman was present, the central train dispatcher was not informed—as required by CSXT's operating rules—of Benhoff's work plans on the track. Due to this oversight, no train engineer or dispatcher was notified of the obstruction on the track caused by Benhoff's work.

On December 18, 1992, a MARC train en route to Baltimore rounded a bend and collided with one of Benhoff's backhoes, which blocked the tracks. It is undisputed that the collision

was not caused by negligence on the part of personnel on the MARC train. Benhoff made a claim for $40,420.25 against CSXT for the damage to the backhoe. Without conceding liability, CSXT settled the claim for $23,350. Relying on the indemnity agreement in the contract, CSXT made an indemnification claim against the MTA for $23,350 plus attorney's fees.

After the MTA denied CSXT's claim, CSXT appealed to the Board. The Board held that CSXT was not entitled to indemnity because the claim did not arise "out of 'Contract Service.'" The Board opined that "the mere fact that a MARC train was innocently and fortuitously involved in the incident does not bring the incident within the ambit of the definition of 'contract service' under the Contract." Moreover, the Board ruled that Benhoff's work—repairing the grade crossing—did not constitute Contract Service within the meaning of the contract. The circuit court, affirming the Board, held that 1) the work being performed by Benhoff was not within the scope of the contract service and 2) the "fortuitous" involvement of the MARC train in the accident did not require indemnification by the MTA.

## DISCUSSION

### I.  Standard of Review

The Board is an "agency" within the ambit of the Maryland Administrative Procedure Act, which is codified in the Maryland Code, State Government article, § 10–101 *et seq.* (1995). *Department of General Services v. Harmans Associates Ltd. Partnership,* 98 Md.App. 535, 542, 633 A.2d 939 (1993). Where an agency's decision is predicated solely upon an error of law, no deference is appropriate and the reviewing court may substitute its judgment for that of the administrative agency. *Washington Nat'l Arena Ltd. Partnership v. Comptroller of Treasury,* 308 Md. 370, 378–79, 519 A.2d 1277 (1987); *Kohli v. LOOC, Inc.,* 103 Md.App. 694, 710–11, 654 A.2d 922 (1995); *Gray v. Anne Arundel County,* 73 Md.App. 301, 307–09, 533 A.2d 1325 (1987).

■ In the case *sub judice*, the facts are undisputed. The Board's decision was a purely legal determination of the meaning of the contractual term "arising out of." Thus, we must determine only whether the Board applied the correct principles of law to the undisputed facts. In making that determination, we accord no deference to the Board's findings. *Kohli, supra,* 103 Md.App. at 711, 654 A.2d 922.

## II.

■ CSXT asserts that the December 18, 1992, collision arose out of "Contract Service" because the collision involved a MARC train and "Contract Service" specifically includes "train operations." CSXT argues that, contrary to the Board's determination and the MTA's assertions, questions of legal liability or fault play no role in the determination of whether the claim "arises out of" contract service.

The MTA argues that the term "arising out of" requires a causal connection "between the damage or injury and the activity covered by the provision." The MTA asserts that although it was "the impact between the MARC train and the backhoe that eventually led to the payment CSXT made to Benhoff" the required causal connection is nevertheless lacking. The MTA argues that no causal connection exists because the MARC train did not causally contribute "to the dangerous situation that caused the collision," *i.e.*, it was not negligent. According to the MTA, "[a]ll that one can say . . . is that the MARC train was 'there.' But being there is not sufficient" to require indemnification of CSXT.

Whether someone or something else other than the MARC train may be legally liable for the damage is immaterial. The issue of negligence is separate from that of causation and it has no role in determining whether the collision "arose out of" Contract Service.

In construing the phrase "arising out of the Contract Service," we apply the definition set forth in *Northern Assurance Co. v. EDP Floors,* 311 Md. 217, 230, 533 A.2d 682 (1987). In that case, the Court determined that the "words 'arising out

of" must be afforded their common understanding, namely to mean originating from, growing out of, flowing from, or the like." *Id.* at 230, 533 A.2d 682; *see also* 12 Couch on Insurance 2d § 45:61 (rev. ed. 1981) ("arising out of" generally means originating from, growing out of, or flowing from); 6B Appleman, Insurance Law and Practice § 4317, at 360–63 (Buckeley ed. 1979) (in automobile insurance context, words arising out of have "broader significance than words 'caused by' and are ordinarily understood to mean originating from, incident to, or in connection with the use of the vehicle").[1] In addition, in Maryland, it is well established that the words "arising out of" require a showing of a causal relationship, although "recovery is not limited to the strict rules developed in relation to direct and proximate cause." *National Indemnity Co. v. Ewing,* 235 Md. 145, 149–50, 200 A.2d 680 (1964); *see Frazier v. Unsatisfied Claim & Judgment Fund Bd.,* 262 Md. 115, 277 A.2d 57 (1971); *McNeill v. Maryland Ins. Guar. Ass'n,* 48 Md.App. 411, 427 A.2d 1056 (1981); *see also* 1 Rowland H. Long, The Law of Liability Insurance, § 1.22, at 1–57 (1972) ("The phrase 'arising out of' is not to be construed to mean 'proximately caused by.' . . . The words 'arising out of' mean causally connected with, not 'proximately caused by' use.").[2]

A Minnesota Supreme Court case, *Faber v. Roelofs,* 311 Minn. 428, 250 N.W.2d 817 (1977), cogently discusses the meaning of the term "arising out of." In *Faber,* an elementa-

---

1. We note that the Board failed to use this definition of the term "arising out of" when it concluded that "[i]t stretches the meaning of the words of § 1(a) of the contract beyond all reasonable bounds to find that those words were meant to include as an activity encompassed under Contract Service *any* occurrence involving a MARC train."

2. While the aforementioned cases and treatises interpret the words "arising out of" in the context of automobile insurance policies, we see no reason to construe these words differently in this context. *See Servants of Paraclete, Inc. v. Great American Insurance Company,* 857 F.Supp. 822, 837 (D.N.M.1994) (extending interpretation of "arising out of" in automobile insurance context to policy providing Owner's, Landlord's and Tenant's (OL & T) coverage and stating that "the Court finds no reason to define the same words more restrictively in an OL & T policy").

ry school student was injured when he ran into the street alongside his school bus and fell under its wheels. A jury found that neither the owner nor the driver of the bus was negligent; but it did find negligence on the part of the school district that hired the bus company. *Id.* at 819. The bus was insured by Mutual Service Casualty Insurance Company (Mutual) and the school district was an additional insured under the policy. *Id.* at 819, 822. The policy required Mutual to indemnify the school district if the district became legally obligated to pay damages because of bodily injury "arising out of the ... use" of the school bus. *Id.* at 822.[3] Mutual argued, however, that the boy's injuries did not "arise out of the use" of the bus because the jury found no negligence by either the driver or owner of the bus. *Id.* The *Faber* Court disagreed and held that a sufficient causal relation was present by the mere fact that the boy was run over by the insured vehicle. *Id.* at 823. It reasoned that accepting Mutual's contention "would result in rewriting the last phrase of the coverage clause to read 'arising out of the *negligent* ... use of the automobile.' That is not how the policy reads." *Id.* at 822.

We agree with the reasoning in *Faber* and find it particularly applicable to this case. Accepting the MTA's argument would result in rewriting the indemnification clause to read that the MTA agrees to indemnify CSXT from "any and all casualty losses, claims ... or liability of every kind arising out of the *negligent performance* of the Contract Service under this agreement."

The reasoning of the Court in *Northern Assurance Co. v. EDP Floors, supra,* is also instructive. In *EDP Floors,* an accident occurred when an intoxicated employee, in the course of unloading EDP's truck, caused floor tiles to fall on the plaintiff. The plaintiff sued EDP on theories of vicarious

---

3. The indemnification clause reads:

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

liability—for the employee's negligence—and direct liability for negligent hiring and supervision. *EDP Floors, supra,* 311 Md. at 220, 533 A.2d 682. EDP's insurer refused EDP's request for a defense based on an exclusion in the policy for injuries "arising out of" the unloading of a vehicle. *Id.* at 221, 225, 533 A.2d 682. On appeal, EDP argued that the exclusion did not apply to the direct negligence claim because the alleged negligent hiring was an *independent cause* of the injury, separate from the employee's negligence in unloading the vehicle. *Id.* at 225, 229–30, 533 A.2d 682. The Court held that, since the negligent unloading of a truck by an EDP employee was at least *"an 'arising out of' cause "* of plaintiff's injury, the exclusion applied regardless of whether the injury may also have arisen from other causes further back in the sequence of events. *Id.* at 230–32, 533 A.2d 682 (emphasis added). The Court applied the following rationale:

> While these words ["arising out of"] plainly import a causal relation of some kind, read in context, they **do not require that the unloading of the truck be the sole 'arising out of' cause of the injury;** they require only that the injury arise out of the unloading of the vehicle.... This is so regardless of whether the injury may also be said to have arisen out of other causes further back in the sequence of events, such as the employee's consumption of alcohol, or the employer's negligent failure to supervise the employee.... As we see it, the language in the exclusionary clause clearly **focuses** the "arising out of" **inquiry on the instrumentality of the injury,** i.e., upon the truck and its unloading.

*Id.* at 230–31, 533 A.2d 682.

█ Applying this rationale to the case *sub judice* leads to the conclusion that whether the injury may also have arisen out of other causes further back in the sequence of events, such as the alleged negligence of CSXT or Benhoff, is irrele-

vant.[4] For the indemnification provision to apply, it is enough that the MARC train, which was included in the definition of Contract Service, was **"a cause"** of the injury. The MARC train was "a cause" of the injury since it is undisputed that the damage was caused when the MARC train impacted with Benhoff's backhoe.

From the broad and comprehensive language used in the provision, we conclude the parties intended to cover all claims "arising out of the Contract Service"—not just claims arising out of negligence. Any contrary interpretation, based on theories of negligence or proximate causation, would defeat the intent of the parties. *See Aragona v. St. Paul Fire & Marine Ins.*, 281 Md. 371, 379, 378 A.2d 1346 (1977) ("principles of causation will not be applied to defeat the intent of the parties" as manifested in "all-encompassing" exclusionary clause of insurance contract); *Princemont Constr. Corp. v. Baltimore & Ohio R. Co.*, 131 A.2d 877, 879 (D.C.1957) (when the terms of an indemnity agreement are broad and comprehensive, there is a presumption that "if the parties had intended some limitation of the all-embracing language, they would have expressed such limitation.... If the parties wished to limit the scope of the language they could have easily done so; we are not at liberty to do it for them").

### III.

■ In its brief, the MTA argues, alternatively, that, even if the damages did arise out of Contract Service, the MTA's promise to indemnify CSXT is rendered unenforceable by section 5–305, which provides, in pertinent part:

A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement

---

4. CSXT also presents the following issue for our determination: Whether the indemnification claim applied because the rehabilitative work and the flagging activity [negligently performed by CSXT] at the site of the collision were in support of contract service and therefore covered by the indemnification clause. In view of our holding, which grants CSXT indemnification, determination of this issue is unnecessary.

*relating to the construction, alteration, repair, or mainte-
nance* of a building, structure, appurtenance or appliance,
including moving, demolition and excavating connected with
it, *purporting to indemnify the promisee against liability
for damages arising out of bodily injury to any person or
damage to property caused by or resulting from the sole
negligence of the promisee or indemnitee,* his agents or
employees, *is against public policy and is void and unen-
forceable.* This section does not affect the validity of any
insurance contract, workmen's compensation, or any other
agreement issued by an insurer.

Md.Code Ann., Cts. & Jud. Proc. § 5-305 (1995) (emphasis
added). The MTA maintains that section 5-305 bars recovery
because 1) the promise to indemnify is "in connection with or
collateral to" the Benhoff agreement, which is a construction
or maintenance agreement within the meaning of the statute;
and 2) CSXT is seeking indemnity for its own negligence, the
sole negligence of Benhoff, or the concurring negligence of
Benhoff and CSXT—any of which are precluded under section
5-305.

CSXT points out that the MTA "quickly glosses over" the
fatal flaw of their argument, which is the fact that the indem-
nification agreement in this case is neither "in, or in connec-
tion with, or collateral to, a contract or agreement relating to"
construction. We agree. Although the collision may have
arisen out of the construction contract between CSXT and
Benhoff, CSXT's right to indemnification does not arise out of
a construction contract. Rather, CSXT's right to indemnifica-
tion arises out of the indemnification provision contained in
the contract between CSXT and the MTA.

In an attempt to circumvent this critical issue, the MTA
quotes *Helm v. Western Md. Ry. Co.,* 838 F.2d 729, 733 (4th
Cir.1988), in which the Court observed: "The language in the
Maryland statute is very broad, and we find no indication that
the General Assembly tried or intended to limit § 5-305's
reach to contractors and subcontractors specializing in con-
struction." Neither this statement nor the holding in *Helm*
provides support for the MTA's argument. In *Helm,* the

Western Maryland Railway Company (Railroad) entered into a licensing agreement with Carroll County, in which the County (the licensee) obtained the right to enter a right of way owned by the Railroad in order to install a box culvert in the area. *Id.* at 730. The licensing agreement contained an indemnity clause under which the County agreed to reimburse the Railroad against all loss "growing out of the operation" of the agreement. In addition, the County's contract with a third party to build the box culvert included a proviso that the railroad, as required, would remove tracks, ties, and signal poles in the area. *Id.* at 730. When a railroad employee was severely injured by a utility pole, which broke and fell while he was working on it, the Railroad sought indemnification from the County. *Id.* at 730–31. The *Helm* Court held that the indemnification provision was void under section 5–305. But, in doing so, the Court relied entirely on the fact that the railroad was actively engaged in construction work pursuant to the contract when the injury occurred. *Id.* at 732–33.[5]

In an earlier case, *Brown v. Baltimore and Ohio R.R. Co.*, 805 F.2d 1133, 1142–43 (4th Cir.1986), the Fourth Circuit rejected a broad reading of section 5–305 and held that the section was inapplicable. In that case, a railroad employee was injured while a passenger on a train that collided with a piece of equipment belonging to a contractor hired by the county. The agreement under which the railroad allowed the county to work on the tracks provided that the county would indemnify the railroad for any liability "arising out of" the work being done. *Id.* at 1135–36. In *Brown*, the Court recognized the distinction between a situation where the indemnification provision is entered into by the parties to a

---

5. The Court stated:

[H]ere, the Railroad was not a passive licensor. Here, the Railroad expressly contracted to do construction work, for which it was directly reimbursed by the County. The parties have not so argued, but it might be most appropriate to view this arrangement as a license to work on the Railroad's right of way *plus* a contract (with cost-based reimbursement) for specialized construction services provided by the Railroad and associated with the project.

*Id.* at 733.

construction contract and a situation where, as here, the indemnification provision has no connection to any construction contract:

> [W]hile an expansive interpretation of the statute's phrase, "in, or in connection with or collateral to, a contract . . . relating to . . . construction" could be read to reach the railroad indemnity agreement here, we are satisfied that this could not have been the legislative intent. . . .
>
> . . . [W]e think the legislation could not have been intended to prevent mere licensors or easement grantors such as the railroad here—as distinguished most readily from the parties to the construction contract—from exacting indemnity from their licensees or easement grantees. . . .

*Id.* at 1142.

The *Helm* Court concisely explains the distinction between its holding and the holding in *Brown* as follows:

> To reconcile Brown and the present case it is merely necessary to appreciate that, while both cases involved contracts granting permission to engage in construction on a railroad's right of way, in *Brown* the railroad was not engaged in any construction work pursuant to the contract while in the present case the Railroad was engaged in construction work pursuant to (although not required by) the contract when the injury occurred. Thus, only in the present case is it necessary to apply Maryland's expressed public policy against requiring indemnification for one's own negligence in performing construction-related work contracted for by the indemnitor.

*Helm, supra,* 838 F.2d at 732.

We hold that section 5-305 of the Maryland Courts and Judicial Proceedings article is not applicable to the indemnification provision in the contract between the MTA and CSXT.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR HOWARD COUNTY WITH INSTRUCTIONS TO ENTER AN ORDER REVERSING THE ORDER OF THE MARYLAND BOARD OF CONTRACT APPEALS AND DIRECTING THE BOARD TO**

648

ORDER APPELLEE TO PAY $23,350 PLUS COSTS AND ANY ATTORNEYS FEES TO WHICH APPELLANT MAY BE ENTITLED; COST OF THIS APPEAL TO BE PAID BY APPELLEE.