**MORK CLINIC, Respondent,**

v.

**FIREMAN'S FUND INSURANCE CO., Appellant.**

**No. C2–97–1725.**

Court of Appeals of Minnesota.

March 17, 1998.

Gerald Bren, Bren, Przybeck & Stotler, St. Louis Park, Nancy K. Caron, Caron, McCormick, Constants, & Goldberg, Chicago, IL, for appellant.

Richard J. Thomas, Burke & Thomas, St. Paul, for respondent.

Considered and decided by Lansing, P.J., and CRIPPEN and KALITOWSKI, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Fireman's Fund Insurance Co. challenges the trial court's declaratory judgment that appellant is liable to pay defense and settlement costs to its insured, respondent Mork Clinic. We affirm, finding no merit in appellant's contentions that (a) alleged negligence of the clinic did not cause the injuries of patients who claimed that they were sexually abused, and (b) clinic liabilities incurred as a result of a physician's sexual misconduct come within the medical services exclusion in its policy.

## FACTS

Several former patients of an allergist employed by respondent claimed that the physician had sexually abused them during the course of medical examinations. The claimants filed suit against both the physician and respondent. Respondent gave notice of the claims to its professional liability carrier, Midwest Medical Insurance Co., and to appellant, its general liability carrier.

The commercial general liability policy appellant issued to respondent provided indemnity and defense coverage against claims of bodily injuries "caused by" an occurrence. "Occurrence" is defined in the policy as "an accident, including continuous or harmful re-

peated exposure to substantially the same harmful condition." The policy also contained an endorsement excluding from coverage bodily injury "arising out of [t]he rendering or failure to render medical * * * services or treatment."

After joining Midwest in defense of two claims that were settled, appellant refused to defend further or to indemnify respondent, pointing to the holding in another case that abuse during a clergyman's counseling came within professional service or treatments excluded from coverage in an employer's policy. Respondent later settled with the remaining plaintiffs and brought this suit to obtain a declaration of appellant's responsibility for indemnity, defense costs, attorney fees and interest. The trial court granted respondent its requested relief by summary judgment.

## ISSUES

1. Were the injuries of the claimants caused by the occurrence of respondent employer's negligence?

2. Did these injuries, suffered during a medical examination by an allergist, "arise out of" the rendering of medical services?

3. Did the trial court err by overlooking primary coverage of respondent's professional liability insurer?

## ANALYSIS

■ On appeal from summary judgment, we are to determine whether there are any material facts in dispute and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Because the parties agree that there are no disputed material facts, the court's review in this matter is limited to questions of law. Interpretation of an insurance contract is a legal question that we review de novo. *Haarstad v. Graff,* 517 N.W.2d 582, 584 (Minn.1994).

## I.

■ Appellant contends that the negligent hiring and supervision claims and respondent superior claim asserted against respondent were caused by its employee's intentional sexual abuse, which is not a covered acci-

dent/occurrence. But the immediate cause of the victims' injuries is not the only cause, and the victims had a legitimate cause of action against the employer if they could establish, as they claimed, that respondent was negligent in the hiring, supervision, or retention of their employee. *Ponticas v. K.M.S. Investments,* 331 N.W.2d 907, 911 (Minn.1983) (affirming cause of action for tenant raped in her apartment against owner found to have negligently failed to perform background check on convicted felon hired for position entailing access to apartments). The injuries would not have occurred if respondent had not hired the employee and offered him as its agent to provide professional medical services to the victims. This conduct of respondent, covered by their policy, is an actionable cause of the injuries. *See Republic Vanguard Ins. Co. v. Buehl,* 295 Minn. 327, 331–33, 204 N.W.2d 426, 428–30 (1973) (recognizing cause of action, covered by parents' homeowners policy, where parents allegedly failed to supervise and control child they knew had dangerous propensities for operating a motorcycle, notwithstanding fact that child's operation of vehicle was the immediate cause of injuries).

Appellant contends that *Ponticas* is distinguishable because it dealt with an employee's misconduct that was foreseeable. It argues that the circumstances here should be governed by *P.L. v. Aubert,* 545 N.W.2d 666, 668 (Minn.1996), which found no duty of the employer to anticipate sexual wrongdoing of an experienced teacher. But *Aubert* explored the merits of a negligence claim, not the question of whether a claim was covered by a liability insurance policy. *Id.* at 667–68. The merits of the underlying claims are not before us. We decide the coverage issue with the expectation that the negligence claims involve a duty (which depends on forseeability) and proximate cause (which may also involve a dispute on forseeability).

To support its proposition on causation, appellant misstates the impact of cases determining that multiple causes of injuries "aris[e] out of" certain conduct for purposes of an exclusion from coverage for that conduct. *See State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 63–64 (Minn.1992) (applying

homeowners' policy exclusion for injuries "arising out of" use of a motor vehicle to injury caused by negligently designed trailer hauled by all-terrain vehicle); *Austin Mutual Ins. Co. v. Klande*, 563 N.W.2d 282, 283–85 (Minn.App.1997) (holding that homeowners' coverage exclusion for damage that "results directly or indirectly from" use of vehicles, includes claim for negligent supervision of child injured when motorcycle with hot muffler fell on him); *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881 (8th Cir.1996) (applying exclusion for injuries "resulting from" intentional conduct to claim for negligent supervision of child rapist).[1]

The determinations in these cases focus singularly on the breadth of exclusions for injuries "arising out of" or "resulting from" certain conduct. In those cases, if the immediate cause of injuries constitutes the conduct defined in the exclusion, coverage is defeated for all insureds. The cases have no bearing on the coverage question of whether prior, independent acts of negligence are causative of injuries. Appellant has not asserted the existence or application of an intentional acts exclusion in this case.[2]

As we examine appellant's discussion of case law, we are mindful that the distinction we enunciate has been stated before in a case cited and clearly examined in briefing for this appeal. *Redeemer Covenant Church of Brooklyn Park v. Church Mut. Ins. Co.*, 567 N.W.2d 71, 77–78 (Minn.App.1997), *review denied* (Minn. Oct. 1, 1997). In Redeemer, we distinguished between the broad scope of the exclusion for conduct "arising out of" criminal, licentious, or sexual behavior and the coverage clause providing that "insurance does not apply to" such conduct. *Id.* We also distinguished *Allstate Ins. Co.*, 74 F.3d at 880–81, as peculiar to its provisions, one providing that each insured was bound by the acts of others and the other an exclusion covering all conduct "resulting from" intentional conduct. *Id.*

Finally, citing *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 442–43 (Minn.App. 1996), for the proposition that negligent retention claims depend on an accompanying intentional tort, appellant asserts that the two acts are interrelated and coexistent such that neither can be viewed separately. Appellant implies in this argument that the clinic's alleged negligence is subsumed into the intentional act of its employee, so that neither action is an "occurrence" (accident) under appellant's policy. This is merely a variation of appellant's ill-considered reliance on holdings that an immediate cause of injuries prompts application of an exclusion for injuries arising out of that kind of act. *Bruchas* does not deal with insurance coverage, and there is no authority for the suggestion that coverage is wanting for an insured merely because indemnity or defense for another insured has been excused under coverage provisions or under an exclusion that does not broadly apply to all injuries arising

1. The cases cited by appellant are merely representative of a settled proposition of law in Minnesota. *See also Faber v. Roelofs*, 311 Minn. 428, 435, 250 N.W.2d 817, 821–822 (1977) (claim for injury to child run over by school bus fell within ambit of exclusion in school's general liability policy for injuries "arising out of" use of a motor vehicle); *Fillmore v. Iowa Nat'l Mut. Ins. Co.*, 344 N.W.2d 875, 876–77, 881 (Minn.App.1984) (claim for negligent entrustment against parents for providing car to son fell within policy exclusion for injuries "arising out of" use of motor vehicle).

2. Enlarging its mistaken analysis of this caselaw, appellant suggests that the employer's negligent acts would be covered only in the unique circumstance in which the victim's injuries "arose out of" both the wrongful acts of the employer and the employee, as might be true if the actions of the two tortfeasors were inextricably interwoven concurrent causes of harm. *See Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 923 (Minn. 1983) (use-of-motor-vehicle exclusion applies to fire caused by burning embers in back of pickup truck, but claims covered because fire also independently caused by act of placing embers in truck); *Woodrich Const. Co. v. Indemnity Ins. Co. of North America*, 252 Minn. 86, 92–93, 89 N.W.2d 412, 417–18 (1958) (injury to bystander caused by negligently driven truck arose out of use of motor vehicle, but injury also caused by negligent placement of turntable upon which truck was driven). As appellant observes, of course, respondent's negligence was not so intertwined with the conduct of its employee. But this reasoning is beside the point. We do not have at hand the question as to whether both causative acts come within a single exclusion. Rather, absent any issues on exclusions, we need only determine whether there is a causative tie between the employer's negligence and the victim's injuries.

out of a stated course of conduct. *See Redeemer*, 567 N.W.2d at 77 (separately analyzing coverage for claim of employer's negligent supervision); *Buehl*, 295 Minn. at 330–33, 204 N.W.2d at 428–30 (separately analyzing coverage for parents' negligent supervision).

In respect to appellant's *Bruchas* argument, as respondent suggests, the severability clause in this policy supports the conclusion that the employer's negligence is a causative occurrence. Appellant suggests that the employer's alleged wrongdoing is interrelated with the employee's intentional act, but the severability clause calls for separate examination of the duties of each insured. *Cf. Steele*, 74 F.3d at 881 (applying to conduct of parents an exclusion for injuries "resulting from" an intentional act of their child, partly because of broad exclusion and partly because of joint obligation provision stating that each insured was bound by acts of other insureds).

## II.

■ Appellant next contends that coverage for the claims against respondent is defeated by the exclusion in its policy for injuries arising out of the rendering of medical services. The burden is on the insurer to establish the applicability of an exclusion. *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 313–14 (Minn.1995). Further, exclusions are strictly interpreted against the insurer. Hubred v. Control Data Corp., 442 N.W.2d 308, 310 (Minn.1989).

■ A professional liability policy does not cover damages caused by sexual misconduct by a physician. *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130, 132 (Minn. 1984). *Smith* bases its holding on the trial court finding that sexual misconduct was not part of treatment services. *Id.* at 131. In the immediate case, it is undisputed, as the trial court observed, that the sexual contact of respondent's allergist was not required for the medical services he was rendering. We find no authority permitting us to conclude that an exclusion for medical services (in the employer's general liability policy) can be treated differently from coverage for professional services (in the professional liability

policy that covers the employee as an insured).

Appellant disputes the authority of *Smith* in construing a professional services exclusion. Appellant argues, essentially, that the exclusion is for liability that "arises out of" medical services and that this language broadens the reach of the subject of services beyond what *Smith* recognized for liability that "results from" professional services. *See Redeemer*, 567 N.W.2d at 77 (recognizing breadth of "arising out of" in exclusion, in contrast with coverage language that specifies certain activities where policy coverage does not "apply").

■ There is nothing in the holding of *Smith* that limits its rule to the exact policy language contained in the policy at issue there. Words not defined in an insurance policy must be given their plain and ordinary meaning. *Great West Cas. Co. v. Barnick*, 529 N.W.2d 504, 506 (Minn.App.1995). "Resulting from" has the same ordinary and plain meaning as "arising out of." *See American Heritage College Dictionary* 73 (3d ed.1997) (definition of "arise" includes "result"). In addition, we observe that *Steele* and *Austin Mutual* dealt with exclusions, respectively, for injuries "resulting from" or damage that "results" from certain conduct and treated the provision in the same fashion as courts that analyzed exclusions for injuries "arising out of" certain conduct. 74 F.3d at 881; 563 N.W.2d at 283–85; *see Redeemer*, 567 N.W.2d at 77 (explaining breadth of "arising out of" exclusion, although not contained in policy at issue in case). And the language that *Redeemer* contrasted with "arising out of" was the wording of an exclusion in the nature of a coverage clause, defining where coverage applied, without using broad language in reference to injuries "arising out of" or "resulting from" covered conduct. *Id.*

Appellant contends that because respondent admits the broad meaning of "arising out of," it postures itself inconsistently by arguing for limits on the scope of the medical services exclusion. But it is legitimate to recognize, on the one hand, the broad impact of an exclusion for injuries arising out of

certain conduct, and on the other hand, the potential for coverage when not dealing with language of this kind. *See id.* (noting that the distinction respecting "arising out of" exclusions "may be a fine one" but is "appropriate and sound"). Moreover, prolonged discussion of exclusion language governing the causal tie to injuries should not distract us from a proper construction of language to the conduct giving rise to the exclusion; the issue at hand relates to the scope of "medical services," and *Smith is* the governing authority on the subject.

Appellant also contends that "medical services" (exclusion in respondent's policy) has a broader meaning than "professional services" (the coverage provision in *Smith*). But the focus of *Smith* is on treatment services, not the scope of professional activity. In a policy issued to a physician, the term "professional services" refers to medical treatment by the physician. *Smith,* 353 N.W.2d at 132. And the alleged negligence of respondent is further removed from treatment of the patient than the treatment service given in *Smith. See id.* at 131 (general practice physician abused patients during medical examinations or treatment).

Appellant's broad construction of "medical services," precluded by precedents on coverage clauses, which are construed liberally, is especially out of place in the context of an exclusion, which is to be construed narrowly. *See Hubred,* 442 N.W.2d at 310 (construe exclusion narrowly); *Rusthoven v. Commercial Std. Ins. Co.*, 387 N.W.2d 642, 645 (Minn. 1986) (ambiguous insurance policy is to be construed in favor of insured).

Finally, appellant contends that its medical-services-exclusion argument is supported by *Houg v. State Farm Fire and Cas. Co. (Houg II),* 509 N.W.2d 590 (Minn.App.1993), *review denied* (Minn. Feb. 24, 1994). But *Houg II* does not deal with the same issue. This court in that case reversed the trial court upon finding that the professional services exclusion of the employer's general liability policy eliminated coverage for sex abuse during counseling services provided by a pastor. *Id.* at 593. *Houg II* does not discuss *Smith* or its rationale, and the parties did not assert its applicability.

Respondent, with support from the trial court, argues that *Houg II* is clearly distinguishable because it fell within the "transference" exception to *Smith* stated in *St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698, 701–02 (Minn.1990) (holding insurer must cover the risks inherent in delivery of a therapist's service). This argument is made notwithstanding an observation in an earlier opinion on the *Houg* litigation that the plaintiff had not pleaded transference. *Houg v. State Farm Fire and Cas. Co. (Houg I),* 481 N.W.2d 393, 398 (Minn.App.1992) *review denied* (Minn. May 15, 1992). Whether or not an actual incident of transference was shown in *Houg II,* it is evident that the case was resolved as a matter, like *Love,* outside the parameters of *Smith.*

In the immediate case, as in *Smith,* the trial court found no linkage whatsoever between the allergist's medical services and sexual abuse. A professional services insurer would not anticipate covering this risk. And an exclusion for these services does not extend any further. The claims against respondent do not fall within the medical services exclusion of its commercial general liability policy.

### III.

■ Finally, appellant contends (a) that respondent has coverage under its Midwest professional liability policy because respondent's supervisory activity was a part of medical services, and (b) that its general liability policy provides only excess coverage after application of the professional liability coverage. Because the trial court correctly determined that the clinic had no coverage under the Midwest policy, we do not reach the excess coverage question.

Appellant's argument on Midwest coverage is twice flawed. First, no matter how broadly we view the professional services rendered to the victims, that is, even if they include both the conduct of the allergist and his employer, *Smith* establishes that the victims' injuries were not a consequence of the delivery of professional services. 353 N.W.2d at 132.

Second, there is no factual basis in this record to support appellant's assertion that the alleged clinic negligence was part of professional services to the victims. When discussing its own coverage, appellant argued, as stated earlier, that alleged clinic negligence was interrelated as a matter of law with its employee's intentional wrongdoing. In a similar vein, but now on the facts, appellant argues that alleged clinic negligence was an inseparable part of medical services for purposes of the coverage language of the Midwest policy. In this argument, appellant relies on cases decided in several states in which the courts find no distinction between medical care of an attending physician and supervisory services of the physician's employer. For example, appellant cites a New Mexico Supreme Court case that finds a medical-services exclusion applicable both to a physician's assistant who attended the patient and the assistant's supervising physician. *Millers Cas. Ins. Co. of Texas v. Flores,* 117 N.M. 712, 876 P.2d 227 (1994). This argument has no bearing on a case, like this one, where there is no evidence that the attending physician's medical services were directly supervised by any agent of the employer.

As the trial court determined on the evidence of record, the clinic's negligence in this case is in the nature of administrative actions not directly affecting the work of a physician in his office. *See Community Hosp. at Glen Cove v. American Home Assurance Co.,* 171 A.D.2d 639, 567 N.Y.S.2d 122, 123 (1991)

(claims of negligent hiring, training and supervision of physician did not "arise out of" rendering of professional services); *Propis v. Fireman's Fund Ins. Co.,* 112 A.D.2d 734, 492 N.Y.S.2d 228, 230 (1985) (acts relating to hiring and firing were not professional activities). This view of the case is sustained by *Redeemer, 567* N.W.2d at 77, where unsupervised intentional torts of an employee were examined independently of alleged wrongdoing by the tortfeasor's employer.

The claims against respondent do not fall within the ambit of its Midwest policy for provision of professional services.

### DECISION

The trial court correctly determined that appellant Fireman's Fund is liable for payment of defense and settlement costs of respondent Mork Clinic. Alleged negligence of the clinic was a cause of injuries to patients of its employee and did not come within the scope of a medical services exclusion in it general liability insurance policy. The record does not show that the clinic's professional liability policy covers the claims it has settled.

**Affirmed.**