# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1509MN

_____

| | | |
|---|---|---|
| American Employers Insurance Co., | * | |
| | * | |
| Appellee, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the District of |
| | * | Minnesota. |
| John Doe 3B, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 21, 1998

Filed:   February 1, 1999

_____

Before  BOWMAN, Chief Judge, BRIGHT and RICHARD S. ARNOLD, Circuit
Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

This case involves the interpretation of an insurance contract under Minnesota law.  The issue on appeal is whether American Employers Insurance Co. (AEIC) has a duty to indemnify its insureds, the Diocese of New Ulm and the Church of St. Joseph, in an action for the negligent employment and supervision of a priest who is alleged to have sexually molested John Doe 3B over an extended period of time.  AEIC claims that the policies it issued do not provide coverage, because Doe's alleged injuries were not caused by an "occurrence," as that term is defined in the policies. The District

Court, relying upon this Court's opinion in <u>Allstate Ins. Co. v. Steele</u>, 74 F.3d 878 (8th Cir. 1996), agreed, and granted AEIC's motion for summary judgment. After the District Court's ruling, the Minnesota Court of Appeals filed a decision in <u>Mork Clinic v. Fireman's Fund Ins. Co.</u>, 575 N.W.2d 598 (Minn. App. 1998). Because we believe <u>Mork</u> is a persuasive statement of Minnesota law, we reverse and remand.

## I.

We summarize briefly the events that led to this lawsuit. AEIC issued four identical comprehensive general liability insurance policies to the two named insureds, which we shall call collectively the Diocese, covering consecutive time periods from January 1, 1980, to July 1, 1984. The policies contained a "Bodily Injury Liability" section that provided that AEIC would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence . . .." In the definitions section of the policies, "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." In addition, the policies provided that "[t]he insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability."

In early 1994, Doe filed suit against the Diocese, alleging that he had been "regularly and repeatedly sexually molested" by a priest who had been employed by the Diocese. The abuse allegedly began in 1976, when Doe was six years old, and ended in 1989, shortly before the priest's death. According to Doe's complaint, the Diocese "knew or should reasonably have known of [the priest's] dangerous and exploitive propensities as a child sexual abuser," and, despite such knowledge, the Diocese negligently employed and failed to supervise the priest properly, and failed to provide adequate warning to Doe and his family.

In 1997, Doe, the Diocese, and two other insurers which had provided liability coverage for the Diocese entered into a settlement agreement. AEIC did not participate in the settlement. The two insurers each paid Doe $50,000 for injuries he allegedly sustained during the period of time during which their policies were in effect. The parties agreed that, in addition to this payment of $100,000, a judgment of an additional $50,000 would be entered against the Diocese for the period of time during which the AEIC policies were in effect; that the Diocese would assign its rights against AEIC to Doe; and that Doe would pursue collection of the remaining judgment only against AEIC.

Earlier, in 1996, AEIC had commenced a declaratory-judgment action seeking a declaration of its rights and obligations under its policies. Following the settlement agreement, AEIC filed a motion for summary judgment. AEIC alleged, first, that it had no duty to indemnify the Diocese because Doe did not sustain a "bodily injury" as defined by the policies, and, second, that any injuries sustained by Doe were not caused by an "occurrence," as that term is defined by the policies. The District Court, viewing the evidence and drawing all justifiable inferences in Doe's favor, held that the physical pain suffered by Doe during certain instances of the alleged sexual abuse did, in fact, constitute "bodily injury." The Court agreed with AEIC, however, that, under Minnesota law, "the intentional acts of [the priest], not the negligence of the Diocese, resulted in [Doe's] injury," and that it therefore cannot be said that "an accident" caused Doe's injury, as required by the policies' definition of "occurrence." In addition, the Court held that the policies' separability clause did not create coverage, because that clause "merely requires that the acts of the Diocese be viewed independently of the acts of [its employee]," and that, under Minnesota law, it is the intentional tort, not the alleged negligent supervision, that causes an injury.

## II.

In <u>Allstate Ins. Co. v. Steele</u>, 74 F.3d 878 (8th Cir. 1996), this Court, interpreting Minnesota law, held that a negligent-supervision claim arising from a sexual assault did not trigger coverage because the injury to the victim would not have occurred in the absence of the intentional misconduct, which was not covered by the policy. In that case, a twelve-year-old was raped by her sixteen-year-old stepbrother while she was visiting her father and stepmother. The victim's mother sued the stepbrother, the father, and the stepmother, as well as the stepbrother's father. As against the adult defendants, the victim's mother alleged negligent supervision, negligent failure to protect, and negligent infliction of emotional harm. The insurance company sought a declaratory judgment that none of its policies covered damages resulting from the stepbrother's sexual misconduct, and the District Court held that the policies covered accidents, not intentional sexual misconduct. The District Court also held that the policies' "joint obligations" clause, which provided that the "responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another [insured]," barred coverage on the negligence claim. <u>Id</u>. at 880-81 (citing <u>Allstate Ins. Co. v. Steele</u>, 885 F. Supp. 189, 192-93 (D. Minn. 1995)). (This clause stands in contrast to the separability clause contained in the policies at issue in the present case, stating that coverage "applies separately to each insured.")

On appeal, this Court agreed, and affirmed the grant of summary judgment. We noted that the policy in effect at the time of the rape specifically excluded coverage for injuries "resulting from" acts that are "intended or expected to cause bodily injury," and, accordingly, held that the policy did not cover the negligent-supervision claims, since the victim's injuries "resulted from" conduct that was excluded under the policy. (The policies in this case have no such express exclusion for intentional acts.) The Court relied upon two decisions of the Minnesota courts regarding negligent supervision and entrustment, <u>Fillmore v. Iowa Nat'l Mutual Ins.</u>, 344 N.W.2d 875 (Minn. App. 1984), and <u>Faber v. Roelofs</u>, 250 N.W.2d 817 (Minn. 1977). In those

-4-

cases, claims for coverage were barred because the injuries were either "the result of" or "arose out of" conduct that was expressly excluded from coverage. We held that, even assuming the adult defendants were negligent in their supervision of the stepbrother, the injury would not have occurred absent his misconduct, and that, therefore, the harm "resulted from" the intentional act. According to the Court, the plaintiff could not circumvent the policy's intentional-conduct exclusion by suing on a theory of negligent supervision.

Although the Supreme Court of Minnesota has not addressed the central issue presented in this case, that state's Court of Appeals has done so, and it is that decision, Mork Clinic v. Fireman's Fund Ins. Co., 575 N.W.2d 598 (Minn. App. 1998), that we find persuasive as to state law. In Mork, a physician was accused of having sexually abused several patients during medical examinations. The patients sued the physician, the clinic, and the clinic's general liability carrier, Fireman's Fund Ins. Co. Fireman's Fund participated in settlement agreements with two of the patients, and then refused to defend further or to indemnify the clinic. The clinic, against which claims of negligent hiring and supervision and of respondeat superior were made, settled with the remaining plaintiffs. The clinic then brought a declaratory-judgment action against Fireman's Fund to determine the insurance company's responsibility for indemnity, defense costs, attorney fees, and interest.

The trial court granted summary judgment in the clinic's favor, and the Court of Appeals affirmed. The policy being construed provided coverage for claims of bodily injuries "caused by" an "occurrence," which was defined as "an accident, including continuous or harmful repeated exposure to substantially the same harmful condition." On appeal, Fireman's Fund argued that the injuries sustained by the patients were caused by the physician's intentional sexual abuse, which, it said, was not a covered "accident" or "occurrence." That claim was rejected by the appellate court. The Court wrote that "the immediate cause of the victims' injuries is not the only cause, and the victims had a legitimate cause of action against the employer if they could establish, as

they claimed, that [the clinic] was negligent in the hiring, supervision, or retention of their employee." Mork, 575 N.W.2d at 600. Although the merits of the underlying negligence claim were not before the Court (only the question of whether the claim was covered by the insurance policy), it noted that "[t]he injuries would not have occurred if [the clinic] had not hired the employee and offered him as its agent to provide professional medical services to the victims." Id.

The Court distinguished our opinion in Steele, as well as the opinions in other cases controlled by Minnesota law, including Fillmore and Faber, supra at 4. The Court found that those cases focused primarily on the "breadth of exclusions for injuries 'arising out of' or 'resulting from' certain conduct" and that the cases "have no bearing on the coverage question of whether prior, independent acts of negligence are causative of injuries." Mork, 575 N.W.2d at 601. In addition, the Court noted that it had previously distinguished Steele, in Redeemer Covenant Church of Brooklyn Park v. Church Mut. Ins. Co., 567 N.W.2d 71, 77-78 (Minn. App. 1997), as dependent on the specific provisions of the policies involved in that case, including the "joint obligations" clause, which provided that each insured was bound by the acts of others. Mork, 575 N.W.2d at 601. Further, in Mork, as in this case, the policy contained a separability clause, and the Court held that the clause supported the conclusion that the employer's negligence was a "causative occurrence." Id. at 602.

## III.

For the foregoing reasons, Mork is persuasive. Accordingly, we hold that, under Minnesota law, the Diocese is entitled to indemnification under the AEIC policies. On remand, AEIC may assert any other defenses to which it believes it is entitled, including defenses related to the reasonableness of the settlement agreement.

Reversed and remanded for proceedings consistent with this opinion.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.