**LANCER INSURANCE COMPANY,**
Petitioner,

v.

**GARCIA HOLIDAY TOURS,**
et al., Respondents.

No. 10–0096.

Supreme Court of Texas.

Argued Jan. 4, 2011.

Delivered July 1, 2011.

E. Thomas Bishop, Alexander N. Beard, Bishop & Hummert, P.C., Dallas TX, Barham Lewis, Carolyn Ann Russell, Ogletree Deakins Nash Smoak & Stewart PC, Houston TX, for Petitioner.

Jason P. Hoelscher, Sico White Hoelscher & Braugh LLP, Corpus Christi TX, William David George, Connelly Baker Wotring LLP, Houston TX, Earnest W. Wotring, Craig M. Sico, Sico White Hoelscher & Braugh LLP, Corpus Christi TX, David D. Towler, Law Office of David D. Towler, San Diego TX, Joseph E. Ritch, Wigington Rumley Dunn LLP, Stephen Jeffrey Chapman, Chapman Law Firm, Corpus Christi TX, for Respondents.

Justice MEDINA delivered the opinion of the Court.

The question in this appeal is whether the transmission of a communicable disease from the driver of a motor vehicle to a passenger is a covered loss under a business auto policy, which affords coverage for accidental bodily injuries resulting from the vehicle's use. The issue is one of first impression in this state and perhaps the country. The parties advise that they have found no similar reported cases.

The trial court concluded that the policy covered this type of occurrence and ren-

dered summary judgment that the insurance carrier owed a duty to indemnify the insured. The court of appeals agreed that the policy might provide coverage for such a claim but reversed the summary judgment and remanded the case to the trial court to resolve a factual dispute about whether the passengers had contracted the disease while in the vehicle. 308 S.W.3d 35, 47 (Tex.App.-San Antonio 2009). Because we conclude that communicable diseases are not an insured risk under this particular policy, we reverse the judgment below and render judgment for the insurance carrier.

## I

Garcia Holiday Tours operates a commercial bus company in South Texas. It contracted with the Alice Independent School District to provide a bus and driver for a field trip to Six Flags Fiesta Texas in San Antonio. The trip was for members of the Alice High School band, several of whom observed the driver coughing during the trip. Upon their return, the driver was hospitalized after being diagnosed with an active case of tuberculosis.

Tuberculosis, or TB, is a bacterial infection that can live in a person's body without making the person sick.[1] In this inactive state, referred to as latent tuberculosis, the disease is not contagious. Active tuberculosis, on the other hand, is contagious and commonly transmitted by the infected person coughing or sneezing. As one court has observed: "The vast majority of tubercular patients gain their infection through inhalation of the bacilli directly into the lungs. Infection is usually due to the inhalation of wet sputum coughed into the air, where it may float

about in the form of tiny globules for a considerable time and distance." *Earle v. Kuklo,* 26 N.J.Super. 471, 98 A.2d 107, 108 (N.J.Super.Ct.App.Div.1953) (citing 1 Gray, Attorney's Textbook of Medicine § 36.11, p. 542 (3rd ed.1949)).

The immune systems of most people who breathe in the TB bacteria are able to fight off the disease, and thus the newly infected person remains asymptomatic. Only about 10% of those infected with TB develop an active case.[2] Active TB, however, can be quite serious not only because it is contagious but also because the bacteria cause tissue death in the infected organs. The driver here had reportedly been asymptomatic for many years before his TB became active.

The passengers were tested for the disease after learning of the driver's diagnosis, and several tested positive for latent TB. These passengers subsequently sued the driver and bus company, asserting that they were negligently exposed to the disease as a result of being confined on the bus with the infected driver during the band trip. The bus company notified Lancer Insurance Company, its insurance carrier, but Lancer refused to defend the claim, maintaining that such claims were not covered under the policy. Left to defend itself, the bus company proceeded to trial where a jury found it and the driver liable and awarded collectively over $5 million in damages to the passengers who had contracted the disease.

After judgment in the passengers' tort suit, the bus company and driver sued Lancer, asserting contractual and extra-contractual claims and seeking a declaration of rights under the business auto policy. The passengers, now judgment cred-

---

1. *See generally* Centers for Disease Control and Prevention at http: //www.cdc.gov/tb/ (last visited on June 28, 2011).

2. Vinay Kumar, Abul K. Abbas, Nelson Fausto & Richard N. Mitchell, Robbins Basic Pathology pp. 516–22 (8th ed.2007).

itors of the insureds, intervened, also seeking a declaration of Lancer's obligations under the policy.

Lancer and the passengers filed summary judgment motions. Lancer's motion sought to establish that the passengers' underlying claims and judgment required neither a defense nor indemnification under the terms of the business auto policy, while the passengers' motion sought to establish Lancer's obligation to indemnify the insureds for the passengers' underlying tort judgment. The bus company and its driver, who as the insureds had initiated the suit, did not seek summary judgment.

The trial court granted the passengers' motion and denied Lancer's. It then severed the passengers' claims from the remainder of the case, allowing Lancer to appeal the passengers' favorable summary judgment, which Lancer did.

The court of appeals reversed the summary judgment. 308 S.W.3d 35 (Tex.App.-San Antonio 2009). While agreeing that the policy might provide coverage for communicable diseases transmitted during the bus trip, the court of appeals nevertheless reversed the passengers' summary judgment because there was no conclusive proof that the passengers'[3] infections had occurred on the bus. *Id.* at 44–47. The court remanded the case to the trial court to resolve this factual dispute about where the infected passengers contracted the dis-

ease which would apparently then resolve whether Lancer had an obligation to indemnify its insureds. *Id.* at 47. Unsatisfied with the court of appeals' decision, Lancer appealed to this Court, and we granted its petition for review to consider the novel coverage question.

## II

Lancer's business auto policy states that coverage is afforded for damages the insured is legally obligated to pay "because of 'bodily injury' ... caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' "[4] The terms accident, auto, and bodily injury are defined in the policy, to wit:

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."

B. "Auto" means a land motor vehicle ... designed for travel on public roads....

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

Lancer concedes that the bus is a covered "auto," the passengers' claims involve an accident, and tuberculosis is a "bodily injury" under the policy's definitions. Lancer maintains, however, that the accident and the injuries did not result from the use of the bus, as the policy requires, but rather

---

**3.** The court of appeals consolidated the appeal of another passenger, John A. Vela, Jr., who, unlike the other passengers, had yet to obtain a judgment against the bus company. Vela had, however, intervened in the coverage suit and obtained a favorable summary judgment and severance order, like the other passengers. The court of appeals concluded that Vela had no justiciable interest in the underlying coverage action and therefore no basis to intervene. 308 S.W.3d at 48. It accordingly reversed the summary judgment in his favor

and dismissed his suit in intervention. Vela has not appealed that judgment.

**4.** The policy described its "Liability Coverage" in section II(A) as follows:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

from other causes, such as the use of a contagious bus driver. Lancer submits that the risk of being exposed to an infectious individual and contracting a disease is a general liability risk, not an auto liability risk, even when the infectious individual happens to be the vehicle's driver. In short, Lancer contends that the nexus between the passengers' injuries and the bus's use is insufficient to invoke the policy's coverage.

The bus company and passengers respond that the policy generally provides coverage for passenger injuries so long as the bus is being used as a bus. They submit that the term "use" is broadly defined in the case law to extend coverage well beyond vehicular accidents or collisions. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Pan Am. Ins. Co.,* 437 S.W.2d 542, 545 (Tex.1969) (defining "use" as a "general catchall" that includes "all proper uses of the vehicle not falling within other terms of definition such as ownership and maintenance"). They maintain that because the bus was being used to transport the passengers at the time of their injury that a sufficient nexus exists between that use and their injuries.

Although the parties disagree about whether the bus's use caused the injuries, they agree that *Mid–Century Insurance Co. of Texas v. Lindsey* is the place to begin the analysis of that question. 997 S.W.2d 153 (Tex.1999). *Lindsey* involved a similar coverage question concerning the requisite causal relationship that should exist between the injury-producing accident and the insured's use of a covered motor vehicle. On the question of liability associated with such use, we said that a covered liability under the auto policy required some causal connection "between the accident or injury and the use of the motor vehicle." *Id.* at 156. In analyzing that connection, we proposed a three-part test, which we borrowed from two respected treatises on insurance law. *Id.* at 157 (quoting 8 COUCH ON INSURANCE 3D § 119.37, at 119–56 (1997) and citing 6B JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 4317, at 367–369 (Buckley ed.1979)). Applying that test, we concluded that the accident in *Lindsey* arose out of the use of the vehicle and was therefore a covered event. *Lindsey,* 997 S.W.2d at 164.

Lancer submits, however, that the *Lindsey* test must be applied in light of policy language and that its policy requires a more direct causal connection between the injury-producing event and the vehicle's use than did the policy in *Lindsey*. Lancer's business auto policy provides coverage for accidental injuries "resulting from the ownership, maintenance or use of a covered 'auto,' " whereas the personal auto policy in *Lindsey* provided coverage for accidental injuries "aris[ing] out of the ownership, maintenance, or use of the ... motor vehicle." Lancer argues that the phrase "arising out of" implies broader coverage than the phrase "resulting from."

The phrase "arising out of" means "originating from, having its origin in, growing out of or flowing from." *Am. States Ins. Co. v. Bailey,* 133 F.3d 363, 370 (5th Cir. 1998). We have not decided whether policies that insure against injuries "resulting from" the use of an auto are significantly different from those that insure against injuries "arising out of" the use. *See Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 142 n. 1. (Tex. 1997) (per curiam) (expressing no opinion whether "resulting from" requires a higher degree of causation than "arising out of").

Some jurisdictions find no significant distinction between the two phrases. *See, e.g., Mork Clinic v. Fireman's Fund Ins. Co.,* 575 N.W.2d 598, 602 (Minn.Ct.App. 1998) (" 'Resulting from' has the same or-

dinary and plain meaning as 'arising out of.' ") (quoting AMERICAN HERITAGE COLLEGE DICTIONARY 73 (3d ed.1997) (definition of "arise" includes "result")); *see also Pension Trust Fund v. Fed. Ins. Co.*, 307 F.3d 944, 952 (9th Cir.2002); *Heritage Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 657 So.2d 925, 927 (Fla.Dist.Ct.App.1995); *St. Paul Fire & Marine Ins. Co. v. Antel Corp.*, 387 Ill.App.3d 158, 326 Ill.Dec. 516, 899 N.E.2d 1167, 1175 (2008); *Dupuy v. Gonday*, 450 So.2d 1014, 1016 (La.Ct.App. 1984). Others suggest that "resulting from" requires a narrower or more direct causation analysis. *See Ohio Cas. Grp. of Ins. Cos. v. Bakaric*, 355 Pa.Super. 345, 513 A.2d 462, 465–66 (1986) (stating that "resulting from" was narrower than the standard "arising out of" language); *State Farm Mut. Auto. Ins. Co. v. Flanary*, 879 S.W.2d 720, 723 (Mo.Ct.App.1994) (equating "resulting from" to "caused by" rather than "arising out of"). The treatises generally equate the two phrases. *Couch on Insurance* states that both phrases are understood to mean "flowing from" or "having its origin in." 7 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 101.52 (3d ed.1997). Another commentary makes no distinction between the two phrases, stating that a policy "written to apply to injuries 'caused by' a particular event should be applied more narrowly than [one] written to apply to injuries 'resulting from' or 'arising out of' a particular event." 2 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 6.3 at 6–93 (5th ed.2007); *cf. Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex.2004) (distinguishing between "arising out of" and "due to" when used in parallel exclusions in the policy). Like these authorities, we see no significant distinction between the two phrases and conclude that the analysis is the same whether the policy requires that an injury "result from" or "arise out of" the covered auto's use.

With that in mind, we return to our previous decision in *Lindsey.*

### III

The injury-producing event in *Lindsey* concerned the accidental discharge of a shotgun, which at the time was resting in a mounted gun rack above a pickup's rear window. *Lindsey*, 997 S.W.2d at 154. The accident occurred when a young boy, who had been fishing with his parents, returned to the family's truck to retrieve his coveralls. Finding the truck locked, the boy climbed into the bed and attempted to enter the cab through the truck's sliding rear window. While attempting this, he accidentally bumped the gun rack and loaded shotgun, which discharged striking Richard Lindsey, who was seated in his mother's car parked nearby.

Lindsey sued the boy's parents and settled for the policy limits on their truck. The settlement did not cover Lindsey's damages, and so he also sought to collect the limits of the uninsured/underinsured motorists coverage of his mother's policy. His mother's insurance carrier, Mid–Century, denied the claim.

Mid–Century argued that there was no coverage under the policy because there had been no physical contact between the two vehicles. We rejected that argument, concluding that the policy's insuring agreement did not cover only auto collisions but also other accidents connected to the auto's use. *Id.* at 156. Turning to the question of liability associated with such use, we stated that a covered liability under the auto policy required some causal connection "between the accident or injury and the use of the motor vehicle," and in analyzing that connection, we proposed a three-part test. *Id.* Although not an absolute test, we recommended the following three factors as "helpful in focusing the analysis" of the coverage question:

(1) the accident must have arisen out of the inherent nature of the automobile, as such,

(2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated,

(3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

*Id.* at 157 (quoting 8 COUCH ON INSURANCE 3D § 119.37, at 119–56 (1997); *accord,* 6B JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 4317, at 367–69 (Buckley ed.1979)).

■ The passengers contend that the accident here satisfies *Lindsey*'s three part test. The passengers submit that they were exposed to tuberculosis while inside the bus being transported to their destination, thus satisfying the first two factors: the accident occurred within the bus's "natural territorial limits" and arose out of the bus's "inherent nature" as a bus, that is, as a means of transportation. Regarding the third factor, the passengers argue that the use of the bus caused their tuberculosis infection in two ways. First, they submit that the bus's closed environment required them to breathe the bacteria expelled by the infected driver for hours, causing them to contract the disease. Second, the passengers argue that the bus's air-conditioning system exposed them to the bacteria by recirculating the contaminated air throughout the bus.

But Lancer maintains that the bus's connection to the infectious disease is too remote or minimal to invoke coverage.

Similarly, an amicus [5] submits that the bus and its air conditioning system merely furnished the condition for, rather than caused, the accident and that it was the unhealthy driver, not the bus, that was instrumental in causing the injury. The amicus concludes that the parties to an automobile liability policy reasonably expect the policy to cover against the risk of automobile accidents and that the injury-producing event in this case—negligent exposure to a communicable disease—is not an "automobile accident" in any sense of that phrase.

■ For liability to "result from" the use of a motor vehicle, there must be a sufficient nexus between its use as a motor vehicle and the accident or injury. *Lindsey,* 997 S.W.2d at 157. According to *Lindsey*'s third factor, the insured vehicle must not merely contribute to cause the condition which produces the injury, but must itself produce the injury. *Id.* This factor is "especially troublesome because of the difficulty in many circumstances of deciding what role a vehicle, as opposed to other things, played in producing a particular injury[.]" *Id.* We cautioned in *Lindsey,* however, that not every injury capable of connection to the use of an auto is a covered use.

■ For example, a drive-by shooting involves a use of a vehicle, but its use is incidental; "the vehicle's role in the occurrence is minimal as compared with the shooter's." *Id.* at 158. Similarly, liability for an injury resulting from an assault committed in an automobile is generally held to be outside coverage.[6] When the

---

5. Property Casualty Insurers Association of America, a trade association representing more than 1,000 property casualty insurance companies doing business throughout the nation, prepared an amicus brief in support of the Petitioner.

6. *See generally,* Larry D. Scheafer, Annotation, *Automobile Liability Insurance: What are Accidents or Injuries "Arising Out of Ownership, Maintenance, or Use" of Insured Vehicle,* 15 A.L.R.4th 10, § 9(e) (1982) (compiling cases); *see also* 2 JEFFERY W. STEMPEL, STEMPEL

vehicle is merely the "situs of an incident that could have occurred anywhere," the causal connection to the vehicle's use is typically too remote to invoke coverage. *Id.; accord LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992).

■ *Lindsey* indicates then that to invoke coverage the vehicle's use must be a producing cause or cause in fact of the accidental injury. *Cf. Utica Nat'l Ins. Co.*, 141 S.W.3d at 203 (suggesting a "but for" causal analysis). To be a producing cause of harm, the use must have been a substantial factor in bring about the injury, which would not otherwise have occurred. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex.2005). And when the vehicle merely furnishes a place for the accident or injury to occur, it is not a substantial factor, and the causal link is insufficient to invoke coverage. *See id.* (noting that cause in fact does not exist when act merely furnishes a condition making injury possible).

The previously mentioned assault cases provide perhaps the closest analogy to our present circumstances. Generally, the courts have held that an auto policy does not cover injuries resulting from an assault that occurs in a motor vehicle.[7] The California Court of Appeals decision in *American National Property & Casualty Co. v. Julie R.* is an example. 76 Cal.App.4th 134, 90 Cal.Rptr.2d 119 (1999).

In that case, a passenger sued a shuttle service operator, alleging sexual assault by one of the operator's drivers. The business auto policy, like our present policy, provided coverage for "'bodily injury . . . result[ing] from the ownership, mainte-

nance, or use of the vehicle.'" *Id.* at 121. The passenger was driven to a secluded location, where the driver parked the car next to a fence in such a way as to prevent her escape. *Id.* at 120. The court concluded the vehicle's use had to be a "substantial factor" in the injury, and that its mere use as transportation to the scene of the injury did "not establish a sufficient causal connection between the 'use' and the injury." *Id.* at 123. The court acknowledged that the driver's "placement of his vehicle against the fence increased the danger that he would be successful in carrying out his intent to rape" his passenger, but the court concluded that the rape "'originated from, grew out of [and] flowed from' [the driver's] intent to rape [his passenger] and his actions with his body to achieve that end," not from the use of the vehicle. *Id.* at 124. Thus, the vehicle's "use was a circumstance accompanying the rape, not a . . . substantial factor in [the passenger's] injury." *Id.*

In other assault cases, courts have found the role of the vehicle to be merely the situs for the injury-producing act. *See, e.g., Payne v. Twiggs Co. Sch. Dist.*, 269 Ga. 361, 496 S.E.2d 690, 692 (1998) (coverage did not extend to injuries that student sustained when attacked on school bus, under policy insuring against any bodily injury "caused by an accident and resulting from the ownership, maintenance, or use of a [school bus]"); *SCR Med. Transp. Servs., Inc. v. Browne*, 335 Ill.App.3d 585, 269 Ill.Dec. 767, 781 N.E.2d 564 (2002) (sexual assault committed by driver for medical transportation services provider was not accident arising out of use of insured vehicle); *State Farm Fire & Cas.*

---

ON INSURANCE CONTRACTS § 22.12[D] (3d ed.2008) (discussing the auto use requirement); 1 ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE, § 4.16 (2006) (discussing causal relation between use and accident).

7. *See* n. 6 supra.

*Co. v. Aytes*, 332 S.C. 30, 503 S.E.2d 744 (1998) (injury from shooting after abduction did not arise from "use" of automobile even though car was used to abduct woman to location of shooting); *Whitmire v. Mid–Continent Cas. Co.*, 928 P.2d 959 (Okla.Civ.App.1996) (same, except abductor tried to immolate victim); *but see Dotts v. Taressa*, 182 W.Va. 586, 390 S.E.2d 568 (1990) (because of elevated duty of care owed to passengers by common carriers, assault of passenger by employee would be construed as arising out of use of vehicle). In these cases, the injury-producing event did not result from the act of transportation or, as we said in *Lindsey*, the "vehicle *qua* vehicle" but rather from person-to-person exchanges, which only incidentally occurred within the locational setting of a motor vehicle. *See Lindsey*, 997 S.W.2d at 156.

The bus company argues, however, that the Fifth Circuit's decision in *Lincoln General Insurance Co. v. Aisha's Learning Center* is the more analogous case. 468 F.3d 857 (5th Cir.2006). There, the driver of a van, used to transport children from their homes to a day care center, failed to unload one of the children upon arriving at the center. The two-year-old child left behind was trapped in the parked van for approximately seven hours during the heat of the day. The court concluded that the van caused, rather than merely contributed to, the conditions that produced the injury because of the inherent nature of a closed vehicle to trap heat:

> Le'Yazmine was injured because she was left in a hot, unventilated *vehicle* by the driver. The vehicle was not merely the situs of the injury, but a producing cause. Unfortunately, the *danger of* leaving children in locked vehicles during extreme weather conditions is well known; it is a danger inherent in the manner in which automobiles trap heat. The same dangers are not found in

classrooms or parks. Thus, "but for" the use of the van to transport Le'Yazmine, she would not have been injured.

*Id.* at 860. Similarly, the bus company argues that the physical characteristics of the bus, its closed environment and ventilation system, caused the passengers' injuries.

The bus here, however, was not as instrumental in producing the passengers' injuries as the van in *Lincoln General*. The bus did not generate the tuberculosis bacteria or make it more virulent. As the Fifth Circuit observed in *Lincoln General*, "[w]here a vehicle is a mere situs of injury, fungible with any other situs, it is not being 'used.'" *Id.* at 860 n. 2. Here, the bus was the mere physical situs of the exposure to the infected person, which could have occurred anywhere. *See Lindsey*, 997 S.W.2d at 156 (noting that if the vehicle is merely the "locational setting for an injury, the injury does not arise out of any use of the vehicle"); *see also State Farm Mut. Ins. Co. v. Peck*, 900 S.W.2d 910, 913 (Tex.App.-Amarillo 1995, no writ) (concluding that passenger bitten by dog while riding in vehicle was not involved in an "auto accident" because the only nexus between the dog-biting accident and the vehicle was that the passenger was sitting in it). Exposure to the disease might have occurred in any number of other enclosed, air-conditioned locations, such as a classroom, theater or restaurant because the instrumentality causing the disease is the infected person, not the infected person's surroundings or the act of using the covered vehicle. We conclude then that the exposure of passengers to a communicable disease was not a risk covered by Lancer's business auto policy because the injury resulted from causes other than the use of the covered vehicle. The bus itself was not a substantial factor in causing the passenger's injuries.

## IV

■ Lancer also complains that the court of appeals erred in not ruling on the issue of its duty to defend under the auto policy. The duties to defend and to indemnify are typically separate and distinct obligations. *King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002). Lancer's motion in the trial court sought summary judgment that it did not owe either duty under the circumstances of this case. The trial court denied Lancer's motion. The passengers' motion sought summary judgment that Lancer had breached both duties, but the trial court granted their motion only as to the indemnity issue. The trial court subsequently severed the indemnity claim from the remainder of the case, making the court's summary judgment on indemnity final for purposes of appeal.

■ Because the passengers' motion, like its own, sought summary judgment on both indemnity and defense, Lancer submits that the court of appeals had both issues before it and should have reviewed the duty-to-defend issue, even though the trial court's summary judgment did not rule on the issue. We disagree.

■ The trial court's only ruling on the issue was to deny Lancer's motion for summary judgment. The denial of summary judgment is an interlocutory order over which an appellate court typically lacks jurisdiction absent some special statutory grant. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001) (noting the general rule that appeal may be taken only from final judgments). Lancer submits, however, that no appellate jurisdictional problem exists in this case because both sides moved for summary judgment on the issue. When opposing parties file counter motions for summary judgment and the trial court grants one motion and denies the other, the appellate court has jurisdiction to determine all questions presented in the opposing motions and to render the judgment the trial court should have rendered. *Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 806 (Tex.2009) (per curiam). This circumstance is an exception to the general rule prohibiting the appeal of an order denying summary judgment. *See generally* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS, § 8.01[3][b] (3d ed.2010).

■ That exception, however, has no application here because the passengers had no right to move for summary judgment on the issue. The duty to defend is owed to insureds, not to third-party judgment creditors of the insureds. The passengers therefore had no justiciable interest in Lancer's alleged breach of that duty, and the bus company, who did have a justiciable interest in the matter, did not move for summary judgment. The final judgment here does not include that issue, and it is not part of this appeal. The court of appeals therefore did not err in failing to address the issue as the matter remains in the trial court as part of the severed action.

\*     \*     \*     \*     \*     \*

We conclude that the transmission of a communicable disease from a bus driver to his passengers was not a risk assumed by the insurance carrier under this business auto policy because the passengers' injuries did not result from the vehicle's use but rather from the bus company's use of an unhealthy driver. The bus, itself, in its capacity as a mode of transportation, did not produce, and was not a substantial factor in producing, the passengers' injuries. The court of appeals' judgment is accordingly reversed and judgment rendered that the passengers, bus company,

and driver take nothing on their indemnity claim against the insurance carrier.