

# NUMBER 13-24-00204-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DEBORA HUGHEY AND
LARRY HUGHEY,                                                    Appellants,

v.

LIBERTY COUNTY MUTUAL
INSURANCE COMPANY,                                              Appellee.

## ON APPEAL FROM THE 211TH DISTRICT COURT
## OF DENTON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Justice Fonseca**

Appellants Debora Hughey and Larry Hughey appeal the trial court's grant of summary judgment in favor of appellee Liberty County Mutual Insurance Company ("Liberty") in a personal injury action. Appellants complain that the trial court erred in granting summary judgment and in sustaining Liberty's objections to some of appellants'

summary judgment evidence. We conclude that the trial court's exclusion of evidence was not an abuse of discretion and that Liberty proved as a matter of law that appellants were not entitled to underinsured/uninsured motorist (UIM) benefits, and, accordingly, we affirm.[1]

## I.    BACKGROUND

During the early morning hours of January 23, 2022, between approximately 1:00 a.m. and 3:00 a.m., John Huckobey drove his vehicle while intoxicated and attempted to enter The Gates of Prestonwood gated community in Carrollton. He allegedly rammed his vehicle into the community's gate several times, eventually damaging the gate, pushing it open, dislodging it from its track, and leaving it resting against a nearby fixed metal structure angled away from the roadway. Several hours later, Debora Hughey, the community HOA president, approached the gate after another resident told her about its condition. She observed it leaning immobile against the metal structure and did not hear any mechanical noises indicating the gate was attempting to shift. The police arrived at approximately 8:50 a.m., meeting with Debora at the site to inspect the gate.

About an hour later, Thomas Nelson, a HOA board member and self-proclaimed "gate guy," went to inspect the gate. Debora arrived and both observed the gate's motor start to run again. Due to this, Nelson went to the gate's operator box, cut power to the gate, and released the manual foot clutch while Debora stood close enough to the gate that it could fall on her. Video of the incident indicates the motor was not running and that

---

[1] This appeal was transferred from the Second Court of Appeals in Fort Worth pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. We are required to follow the precedent of the transferor court to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

the gate was tight against the metal structure.

Liberty's expert witness, Richard Friedrich, a professional mechanical engineer, opined via affidavit that Nelson's actions caused a spring-back effect resulting in the gate being pulled tight and then springing forward when the clutch was released. The gate then fell on Debora, causing her injuries. While Huckobey's driving originally dislodged the gate, Friedrich opined that those forces had come to a rest and that the actions taken by Nelson, who was unqualified to repair or work with the gate, were the sole proximate cause of Debora's injuries. Appellants' expert, Gary Jackson, also opined that the gate was at rest until Nelson started manipulating the operator and "[m]ore likely than not, it was Mr. Nelson's actions that changed the equilibrium and caused the heavy gate to fall." Both experts ruled out weather as a cause for the gate falling.

Appellants filed suit on May 18, 2022, alleging negligence against Huckobey for his actions. Because Huckobey was allegedly underinsured, appellants also sued their own insurer, Liberty, to provide UIM benefits for her damages. Liberty answered denying liability because it claimed that there was no coverage as the policy only covered damages arising "out of the ownership, maintenance or use of the uninsured motor vehicle" and arguing Debora's injuries did not arise out of use of the uninsured motor vehicle.

On September 28, 2023, Liberty filed a motion for summary judgment asserting that both Liberty and appellants' experts agreed that the cause of Debora's injuries were Nelson's actions with the gate, not the driving of Huckobey, because the displacement of the gate occurred many hours prior to Nelson's actions regarding the gate. According to

3

Liberty, Nelson's actions were a new and intervening cause because the conduct from Huckobey had come to rest. Therefore, the UIM coverage of the policy was not triggered because Huckobey's conduct did not proximately cause Debora's injuries and the injuries did not arise out of a use of Huckobey's vehicle. The summary judgment included an affidavit from Liberty's expert Friedrich containing his opinions as described above as well as Jackson's expert report and deposition testimony.

Appellants responded to the motion for summary judgment by arguing genuine issues of material fact remained regarding whether Huckobey's conduct was a significant factor in causing Debora's injuries. Appellants presented evidence that the gate motor was intermittently activating because of Huckobey's conduct and that the attempts to repair the gate due to Huckobey's conduct were foreseeable. Appellants also highlighted that Nelson testified he was unsure whether he had "de-energized" the gate operator prior to it falling. Appellants further argued the Huckobey's damage was a substantial factor and that "but for" his conduct, the gate would have never fallen on Debora.

Of import, appellants attached as evidence to their response a supplemental affidavit from Jackson stating that Friedrich read his report too narrowly and that he did not rule out Huckobey's conduct as a proximate cause of Debora's injuries. Jackson further testified that Huckobey's conduct was a substantial and instrumental factor in causing Debora's injuries. Appellants also attached an engineering report from Bradley Plank opining that the gate gradually moved throughout the morning of the accident due to the gate operator cycling on and off, that the gate operator was not running in the instant before the gate fell, that Debora placed herself in a dangerous position, and that

4

Nelson was not near the foot pedal before the gate fell. Thus, Plank concluded Nelson was not responsible for the gate falling onto Debora and was not negligent.

On November 27, 2023, Liberty filed objections to appellants' summary judgment evidence. Liberty objected to Jackson's affidavit as conclusory for opining on ultimate causation issues without explanation. Liberty objected to Plank's report as inadmissible hearsay because Plank was not deposed and his report was not relied upon by other experts. The trial court denied the summary judgment motion on December 5, 2023.

On March 1, 2024, Liberty filed a motion for rehearing including Jackson's deposition testimony wherein Jackson opined he defined proximate causation as "but for" causation. Appellants responded to the motion for rehearing and attached further deposition testimony from Jackson stating that over the course of time the gate motor pulling on the gate changed the gate's position from leaning to more upright and that as a result Huckobey's negligence was a proximate cause of the gate falling. Appellants also attached deposition testimony from Friedrich wherein he agreed the gate was pulled closer to the post over the course of the morning.

On March 21, 2024, the trial court granted Liberty's motion for rehearing and its motion for summary judgment. The trial court also sustained Liberty's objections to appellants' summary judgment evidence, thus striking the Jackson affidavit and the Plank report. This appeal followed.

## II.    DISCUSSION

Appellants assert by way of three issues, which we reorganize as two issues, that the trial court erred when it granted summary judgment in favor of Liberty and when it

sustained Liberty's evidentiary objections. Because the evidentiary issue affects the summary judgment, we address it first.

## A. Evidentiary Objections

Appellants assert that the trial court erred when it sustained Liberty's objections to appellants' expert affidavit and the Plank report and excluded them from evidence. Appellants presented these as summary judgment evidence to attempt to create a fact issue preventing grant of summary judgment. Liberty responds that appellants waived this argument on appeal, and, in any event, the trial court did not err in excluding the evidence.

### 1. Waiver

To preserve an issue for appellate review, a party must (1) make a timely request, objection or motion in the trial court, and (2) obtain a ruling or a refusal to rule on that request, objection, or motion. TEX. R. APP. P. 33.1(a); *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018). "A basic tenet of appellate procedure is that appellate courts do not generally consider complaints not raised in the trial court." *Cmty. Initiatives, Inc. v. Chase Bank of Tex.*, 153 S.W.3d 270, 281 (Tex. App.—El Paso 2004, no pet.). To preserve error when the trial court excludes evidence, "the complaining party must inform the trial court of the purpose for which the evidence is offered and the reasons why the evidence is admissible." *Id*. This principle extends to excluded summary judgment evidence. *See id*. The proponent of summary judgment evidence "must inform the trial court of the purposes for which the evidence was offered and the reasons why it was admissible." *Id*.

6

Here, Liberty filed its objections to appellants' summary judgment evidence and sought a ruling. Appellants had an opportunity to respond to these objections before the trial court ruled. The record reflects that appellants did not file a response arguing the basis for admission of their evidence. Though appellants' summary judgment response attached the evidence and argued the purposes for which it was offered, the response likewise did not offer the reasons why the evidence was admissible. Therefore, Liberty argues by citation to several cases that appellants' failure to offer arguments in favor of admission of their evidence waives the issue on appeal.

Because this is a transferred case, we must follow Fort Worth Court of Appeals authority. *See* TEX. R. APP. P. 41.3.[2] The most recent Fort Worth Court of Appeals case on this issue holds that "[the Court] do[es] not believe a party is required to object to the sustaining of [the] objection in order to complain of the sustaining of the objection on appeal" and expressly disavowed other Texas appellate court opinions on the issue. *See Miller v. Great Lakes Mgmt. Serv., Inc.*, No. 02-16-00087-CV, 2017 WL 1018592, at *2 n.4 (Tex. App.—Fort Worth Mar. 16, 2017, no pet.) (mem. op.). Accordingly, we must find that appellants did not waive this issue on appeal. *See id*.

### 2. Standard of Review

"The same evidentiary standards that apply in trials also control the admissibility of evidence in summary-judgment proceedings." *Seim*, 551 S.W.3d at 163. The standard of review for the exclusion of evidence in summary judgment proceedings is thus abuse of discretion. *Starwood Mgmt., LLC by and through Gonzalez v. Swaim*, 530 S.W.3d 673,

---

[2] Our Court has no precedent on this issue; therefore, there is no need for discussion on how this case would be analyzed any differently.

678 (Tex. 2017). A trial court abuses its discretion "by acting 'without reference to any guiding rules and principles.'" *Id*. (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). We must uphold the trial court's evidentiary rulings so long as "there is any legitimate basis for the ruling." *Gespa Nicaragua, S.A. v. Recom AG*, 705 S.W.3d 362, 390 (Tex. App.—El Paso 2024, pet. denied) (quoting *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). Further, we should not reverse "unless the error probably caused the rendition of an improper judgment." *Id*.; *see* TEX. R. APP. P. 44.1(a)(1); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995); *see also Estate of Doss*, No. 13-23-00021-CV, 2024 WL 3199152, at *8 (Tex. App.—Corpus Christi–Edinburg June 27, 2024, pet. denied) (mem. op.).

### 3. Jackson Affidavit

The first piece of excluded evidence was Jackson's affidavit supplementing his report. Liberty objected to the affidavit as conclusory (1) for opining on causation without defining proximate causation, (2) for contradicting Jackson's earlier report, and (3) because it served as no evidence of injury arising out of use of a vehicle as required to prevail on a UIM claim. Liberty also asserted there was an overall lack of explanation for Jackson's conclusions in the affidavit.

Though appellants assert that Liberty's second argument is an argument that the affidavit is a sham affidavit, Liberty argues it was only comparing the affidavit to a sham affidavit in support of the contention the affidavit was conclusory. "A sham affidavit is one in which the affiant creates a fact issue with a statement that is contrary to affiant's prior sworn statement and made for the purpose of preventing a summary judgment." *Reynolds*

8

*Energy Transp., LLC v. Plains Mktg., L.P.*, 706 S.W.3d 845, 890 (Tex. App.—San Antonio 2024, no pet.) (citing *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85 (Tex. 2018)). If there is no prior sworn statement, then an affidavit cannot be labeled a sham affidavit. *See id.* Because Jackson's prior expert report is not a sworn statement, the Jackson affidavit cannot be considered a sham affidavit on those grounds. *See id.*; *see also Carrillo v. Hirsch*, No. 13-00-280-CV, 2001 WL 1002198, at *4 n.4 (Tex. App.—Corpus Christi– Edinburg Aug. 31, 2001, pet. denied) ("An expert report does not constitute summary judgment proof absent a jurat, which indicates that the statement's contents were sworn to be true before a notary." (citing *City of San Juan v. Gonzales,* 22 S.W.3d 69, 72 (Tex. App.—Corpus Christi 2000, no pet.))). Therefore, we examine only if the affidavit is conclusory.

Expert affidavits must be probative and raise a fact issue to defeat summary judgment. *Ryland Grp. v. Hood*, 924 S.W.2d 120, 121–22 (Tex. 1996). "Conclusory affidavits are not probative." *Swaim*, 530 S.W.3d at 679 (citing *Hood*, 924 S.W.2d at 121– 22). "To avoid being conclusory, the affidavit must explain 'how and why the negligence caused the injury.'" *Id*. (quoting *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010)). The expert's opinion must have a "demonstrable and reasoned basis on which to evaluate" it. *Id*. (quoting *Elizondo v. Krist*, 415 S.W.3d 259, 265 (Tex. 2013)). This includes explaining the link between the facts relied on and the concluding opinion. *Id*. We must examine if the analytical gap between the data and opinion offered is too large. *See id*. at 680.

Examining Jackson's affidavit, we cannot say that Jackson failed to explain "how and why" Huckobey's negligent conduct might have caused Debora's injuries. *See id*. at

679. Jackson's affidavit explains that, "but for" Huckobey slamming into the gate, "the gate would have remained upright in its correct position" and the "gate would not fall even if Mr. Nelson de-energized the gate controller." Jackson's affidavit explained in specific detail how Huckobey slamming into the gate led to the injuries sustained by Debora. While Liberty contends the chain of causation was severed by Nelson's actions, it does not render Jackson's affidavit conclusory merely because Liberty disagrees with the conclusions Jackson reached.

Liberty argues that the Jackson affidavit failed to include a definition of proximate cause but cites no authority indicating that failure to include a legal definition of proximate cause renders an affidavit conclusory. Instead, the relevant query is whether the opinion has a demonstrable and reasoned basis and if the analytical gap between the data and facts relied upon and the opinion reached is too large. *See id*. at 679–80. Jackson explained in his affidavit regarding the sequence of events from Huckobey's conduct to Debora's injuries. Whether this affidavit is enough to create a fact issue regarding proximate causation is a different issue from the affidavit being conclusory.

Likewise, Liberty's argument that the Jackson affidavit contradicted his report does not persuade us that the affidavit is conclusory. For one, Jackson's affidavit explains why his report did not expressly discuss Huckobey's conduct as he took it for granted that Huckobey was the person who dislodged the gate originally. While Jackson's report explained Nelson was a primary cause of Debora's injuries, the report did not expressly disavow other possible causes, and the affidavit sufficiently explains how and why Huckobey's conduct is another potential cause of Debora's injuries. *See id*. It may have

been a different matter if the Jackson report expressly disavowed Huckobey's actions as the cause of Debora's injuries, but that was not the case here. Even if this could be viewed as an apparent contradiction, Jackson's affidavit is not conclusory because it supplements his opinions in the report. Again, we focus on whether the affidavit provided a link between the facts and conclusions. *See id*. at 679.

Finally, Liberty argues that the affidavit is conclusory because it does not serve as evidence for any of the elements in the UIM coverage issue. We address this issue in more detail below, but of import here, Liberty cites no authority that an affidavit is conclusory merely because it fails to create a fact issue on a matter in dispute. Liberty appears to confuse admissibility of an affidavit with its ability to create a genuine issue of material fact, which are issues reviewed under different standards. The affidavit's conclusory nature does not turn on whether it constitutes evidence of Debora's injuries arising out of use of a motor vehicle, but rather on whether it explains the "how and why" of its opinions. *See id*. at 679–80. We determine that the affidavit sufficiently explains itself so as not to be seen as conclusory.

While we have found the affidavit is not conclusory, the query does not end there. To obtain reversal, appellants had to show that error regarding this evidence was "controlling on a material issue dispositive of the case and was not cumulative," and that it "probably caused rendition of an improper judgment in the case." TEX. R. APP. P. 44.1(a)(1); *Gespa Nicaragua, S.A.*, 705 S.W.3d at 390. Appellants' argument on these two issues is confined to, ironically, a sole conclusory sentence stating, "this erroneously excluded evidence directly addressed the material fact issue regarding proximate

11

causation, thereby precluding the trial court's order granting summary judgment." Appellants did not address why this evidence probably caused the rendition of an improper judgment by arguing why summary judgment would have been defeated if this affidavit were part of the record. *See id*. Accordingly, appellants failed to properly brief this issue and have failed to meet the standard necessary to mandate reversal. *See* TEX. R. APP. P. 38.1(i).

### 4.    Plank Report

The trial court also excluded Plank's expert report. Liberty objected to the report on the basis that it constituted hearsay because Plank was not deposed and the report was not sworn. Liberty argued, without corresponding support, that because Plank was the expert of a dismissed party that any reports from such experts were hearsay.

A statement constitutes hearsay when it is made out of court and is offered into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Exceptions to the hearsay rule include certain categories of documents, such as business records and public records. *Id*. R. 803(6), 803(8). If a statement does not fall within one of these exceptions, it remains inadmissible. Unsworn expert reports are not valid admissible evidence. *See Moron v. Heredia*, 133 S.W.3d 668, 671 (Tex. App—Corpus Christi–Edinburg 2003, no pet.); *see also DeLamar v. Fort Worth Mountain Biker's Ass'n*, No. 02-17-00404-CV, 2019 WL 311517, at *9 (Tex. App.—Fort Worth Jan. 24, 2019, pet. denied) (mem. op.); *Kolb v. Scarbrough*, No. 01-24-00671-CV, 2015 WL 1408780, at *4 (Tex. App.—Houston [1st Dist.] Mar. 26, 2015, no pet.) (mem. op.); *Bayou City Fish Co. v. S. Tex. Shrimp Processors, Inc.*, No. 13-06-00438-CV, 2007 WL 4112003, at *3 (Tex.

App.—Corpus Christi–Edinburg Nov. 20, 2007, no pet.) (mem. op.).

The Plank report attached by appellants to its summary judgment response was not verified and did not have an accompanying affidavit verifying it. Accordingly, it is not admissible evidence. *See Moron*, 133 S.W.3d at 671; *see also Kolb*, 2015 WL 1408780, at *4; *DeLamar*, 2019 WL 311517, at *9. Appellants argue that Liberty's objection was not proper because Liberty did not object to a specific statement in the report but cites no authority that Liberty's hearsay objection had to be limited to specific statements in the report. Indeed, the nature of the objection necessitates objection to the entirety of the report because the entirety of the report is unverified. *See Moron*, 133 S.W.3d at 671; *see also Kolb*, 2015 WL 1408780, at *4; *DeLamar*, 2019 WL 311517, at *9.

Appellants' only other argument for admissibility is that the report was a discovery response by Nelson and therefore was automatically admissible as summary judgment evidence. But this contention is likewise not supported by any rule, statute, or caselaw. Assuming appellants are referring to Texas Rule of Civil Procedure 193.7, appellants misunderstand the rule. Rule 193.7 simply self-authenticates documents produced in response to discovery requests *against the producing party*. TEX. R. CIV. P. 193.7. Liberty did not produce Plank's expert report. Therefore, the Rule is inapplicable in this context. *See id*. It was not an abuse of discretion for the trial court to sustain Liberty's objection to the Plank report.

Because it was not an abuse of discretion for the trial court to sustain the objections to the Plank report, and appellants failed to demonstrate grounds for reversal regarding Jackson's affidavit, we overrule appellants' first issue.

13

**B.      Grant of Summary Judgment**

In their next issue, appellants argue that the trial court erred by granting summary judgment for several reasons, including that there was conflicting evidence on causation, that Liberty failed to prove there was a new and intervening cause of Debora's injuries, and that Debora's injuries met coverage for UIM benefits. "Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). Because we find the issue dispositive, we begin—and conclude—by examining UIM coverage.

**1.      Standard of Review**

We review an order granting summary judgement de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We must consider the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could do so and disregarding contrary evidence unless a reasonable factfinder could not. *Mann Frankfort Stein & Lipp Advisors, Inc v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference for the nonmovant and resolve any doubts in his favor. *20801, Inc. v. Parker*, 248 S.W.3d 392, 399 (Tex. 2008). The burden is on the movant to demonstrate there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Janaki v. C.H. Wilkinson Physician Network*, 624 S.W.3d 623, 627 (Tex. App.—Corpus Christi–Edinburg 2021, no pet.).

14

### 2.    UIM Coverage

Debora's insurance policy with Liberty contained UIM coverage for damages which "arise out of the ownership, maintenance or use of the uninsured motor vehicle." Liberty argued in its motion for summary judgment that she was not entitled to UIM coverage because her injuries did not arise out of use of the uninsured motor vehicle. Instead, Liberty asserts her injuries were entirely due to Nelson's actions.

The Texas Supreme Court has adopted use of a three-prong test to guide in determining whether injuries arise from the use of a motor vehicle for coverage purposes, though this is not an absolute test. *See Mid-Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153, 157 (Tex. 1999). The factors to examine include: (1) if the accident arose from the inherent nature of the automobile; (2) if the accident arose within the natural territorial limits of an automobile and if the actual use of the automobile terminated; and (3) if the automobile itself produced the injury rather than merely contributed to the condition that produced the injury. *Id*.; *Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 56 (Tex. 2011). As the Supreme Court noted, the third factor is troublesome due to the difficulty of determining the role a vehicle played in an injury versus other factors. *See Lindsey*, 997 S.W.2d at 157.

Moreover, "[f]or liability to 'result from' the use of a motor vehicle, there must be a sufficient nexus between its use as a motor vehicle and the accident or injury." *Lancer Ins. Co.*, 345 S.W.3d at 56 (quoting *Lindsey*, 997 S.W.2d at 157). While there have been broad interpretations of this language, the Supreme Court has cautioned that "not every injury capable of connection to the use of an auto is a covered use." *Id*. A drive-by

shooting is a common example of an incidental use of a vehicle because the firearm is the primary mechanism causing the injury. *See id*. Thus, we must determine if the vehicle here was the producing cause of Debora's injuries. *See id*. at 57. "To be a producing cause of harm, the use must have been a substantial factor in bring[ing] about the injury, which would not otherwise have occurred. And when the vehicle merely furnishes a place for the accident or injury to occur, it is not a substantial factor, and the causal link is insufficient to invoke coverage." *Id*. (internal citations omitted). Cause in fact does not exist if an act merely furnishes the condition making injury possible. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005).

Examining all three factors here, we struggle to find that any of them are met. Simply stated, Debora's injuries were caused by the community gate falling on top of her following Nelson's interference at the gate controller box at least five hours after the vehicle struck the gate. The parties vigorously debate whether the gate's position shifted all morning due to the gate mechanism intermittently activating or whether Nelson cutting the power and releasing the manual brake caused the gate to fall. And neither party denies the gate was originally knocked out of place by Huckobey's truck. But the undisputed facts show the use of a motor vehicle is too attenuated to prove causation, and, thus, to trigger UIM coverage.

Starting with the first factor, the gate falling many hours after being hit by the truck shows Debora's injuries did not arise out of the inherent nature of the automobile. *See Lindsey*, 997 S.W.2d at 157. While the vehicle was in operation when it struck the gate, it is not apparent that Debora was hurt because the truck struck the gate but rather

16

because the gate was released by Nelson's actions. Both Jackson and Friedrich agree that Nelson releasing the brake on the gate is what ultimately caused the gate to strike and hit Debora. The truck crash was the first event that set into motion subsequent occurrences which did not arise from the inherent nature of the vehicle.

Moving on to the second factor, we find that the harm was not due to use of the vehicle. *See Lindsey*, 997 S.W.2d at 157. The accident did not occur within the "territorial limits" of the vehicle at all, because the truck was gone from the scene for many hours by the time the gate fell. While the striking of the gate occurred within the "territorial limits" of the truck, the parties do not dispute the truck striking the gate alone did not cause Debora's harm. And, certainly, the use of the truck had terminated by the time the injury occurred. Therefore, the second factor strongly weighs against UIM coverage.

Finally, under the third factor, the facts in this case seem to be more aligned with prior decisions finding the vehicle merely contributed to the condition that caused the injury, rather than directly causing the injury. *See Lindsey*, 997 S.W.2d at 157. A helpful case for comparison is *Home State County Mutual Insurance Company v. Binning*, 390 S.W.3d 696, 699 (Tex. App.—Dallas 2012, no pet.), wherein an assailant caused a rear-end accident to the victim and subsequently assaulted the victim as they exited the vehicle. Like here, the plaintiff argued that "but for" the collision he would not have been subject to the assault. *Id*. But the Dallas Court of Appeals held that because the vehicle was merely incidental to the assault and that the plaintiff's "physical injuries were not caused by the vehicle itself" but instead by the assault, the injuries did not arise out of use of the motor vehicle. *See id*. at 699–700. We have also previously held that the use

17

of the motor vehicle was merely incidental to the actual cause of injury in a case where the defendant was driving a truck and left a gate open allowing cattle that caused an accident to be released. *See State Farm Mut. Auto. Ins. Co. v. Lopez*, No. 13-19-00605-CV, 2020 WL 6878734, at *3 (Tex. App—Corpus Christi–Edinburg Nov. 24, 2020, no pet.) (mem. op.). Likewise here, the vehicle did not directly cause Debora's injuries. While the gate may not have been dislodged without the truck striking it, that does not mean Debora's injuries were caused by the truck as it was the gate falling on her that caused her injuries. The truck was merely incidental to the mechanism of the injury: the gate. *See Binning*, 390 S.W.3d at 699–700; *see also Lopez*, 2020 WL 6878734, at *3.

Because the vehicle here left the scene of the accident many hours prior to the accident, the truck at most merely helped furnish the conditions that caused the accident. We therefore find the trial court's grant of summary judgment proper on the ground that UIM coverage was not triggered because Debora's injuries did not "arise out of the ownership, maintenance or use of the uninsured motor vehicle." As this was a proper ground for granting summary judgment, we need not address the other grounds or points of error here. *See* TEX. R. APP. P. 47.1. We accordingly overrule appellants' second issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
11th day of December, 2025.

18